Citation Nr: 1121873 
Decision Date: 06/06/11 Archive Date: 06/20/11

DOCKET NO. 07-18 910 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to an increased disability rating for service-connected migraine headaches, rated as 10 percent disabling prior to September 28, 2007.

2. Entitlement to an increased disability rating for service-connected migraine headaches, currently rated as 30 percent disabling.

3. Entitlement to a total disability evaluation based upon individual unemployability due to service-connected disability (TDIU). 


REPRESENTATION

Veteran represented by: Disabled American Veterans




ATTORNEY FOR THE BOARD

S. Dale, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 2002 to April 2003.

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from an October 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri.

In November 2009, the Board remanded the matters on appeal as well as the Veteran's claims of (1) entitlement to service connection for irritable bowel syndrome and (2) entitlement to service connection for idiopathic thrombocytopenic purpura for further procedural and evidentiary development. Concerning the issues currently on appeal, the RO/AMC was requested to obtain information regarding the Veteran's employment and to afford the Veteran a VA examination. As will be discussed below, the directives of the remand were completed. Accordingly, the Board finds that VA has substantially complied with the Board's November 2009 remand with regard to this appeal. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with). 

In a January 2011 rating decision, the RO increased the disability rating for service-connected migraine headaches from 10 percent to 30 percent disabling, effective September 28, 2007. However, as the increase did not constitute a full grant of the benefits sought, the Veteran's claim for an increased disability rating remains in appellate status for both the period before and after September 28, 2007. See AB v. Brown, 6 Vet. App. 35, 38- 39 (1993). 

The January 2011 rating decision also granted service connection for irritable bowel syndrome and idiopathic thrombocytopenic purpura; 30 percent and zero percent (noncompensable) disability ratings were assigned, respectively, effective from July 20, 2006. Since service connection was granted, the Veteran's appeals as to those issues have become moot. The Veteran has not disagreed with the assigned disability ratings or the effective dates. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997) (where an appealed claim for service connection is granted during the pendency of the appeal, a second Notice of Disagreement must thereafter be timely filed to initiate appellate review of "downstream" issues such as the compensation level assigned for the disability or the effective date of service connection). Therefore, those matters have been resolved and are not in appellate status.

As will be discussed in greater detail below, the issue of entitlement to TDIU has been reasonably raised by the record. This issue is considered part and parcel to the Veteran's claim for an increased disability rating for migraine headaches. See Rice v. Shinseki, 22 Vet. App. 447 (2009). The issues of entitlement to an increased disability rating for service-connected migraine headaches, currently rated as 30 percent disabling, and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. All relevant evidence necessary for an equitable disposition of the Veteran's claim decided herein has been obtained.

2. Prior to September 28, 2007, the Veteran's migraine headaches included characteristic prostrating attacks occurring on average once a month over a period of several months; there is no evidence of very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability prior to September 28, 2007.
CONCLUSION OF LAW

Prior to September 28, 2007, the criteria for a 30 percent disability rating, but no more, for service-connected migraine headaches were met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. § 4.124a, Diagnostic Code 8100 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2010). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his/her representative, if applicable, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Further, in Dingess v. Nicholson, the United States Court of Appeals for Veterans Claims (Court) held that, upon receipt of an application for a service-connection claim, VA is required to review the evidence presented with the claim and to provide the claimant with notice of what evidence not previously provided will help substantiate his/her claim. 19 Vet. App. 473 (2006); see also 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Specifically, VA must notify the claimant of what is required to establish service connection and that a disability rating and effective date for the award of benefits will be assigned if service connection is awarded.

With regard to claims for increased disability ratings for service-connected conditions, the law requires VA to notify the claimant that, to substantiate a claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration. Finally, the notice must provide examples of the types of medical and lay evidence that the Veteran may submit (or ask the VA to obtain) that are relevant to establishing his/her entitlement to increased compensation. However, the notice required by section 5103(a) need not be specific to the particular Veteran's circumstances; that is, VA need not notify a Veteran of alternative diagnostic codes that may be considered or notify of any need for evidence demonstrating the effect that the worsening of the disability has on the particular Veteran's daily life. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The notice must be provided prior to an initial unfavorable decision by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In this case, the Veteran submitted a claim for an increased rating for service-connected migraine headaches in July 2007. The Veteran was sent a letter in August 2006 which stated that, to substantiate a claim for increased compensation, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The letter advised the Veteran what information and evidence would be obtained by VA, namely, records like medical records, employment records, and records from other Federal agencies. The letter also informed her what information and evidence must be submitted by her, namely, any additional evidence and argument concerning the claimed condition and enough information for the RO to request records from the sources identified by the Veteran. The August 2006 notice also provided examples of the types of medical and lay evidence that the Veteran may submit (or ask the VA to obtain) that are relevant to establishing her entitlement to increased compensation. Specifically, the Veteran was informed in the letter of types of evidence that might show such a worsening, including statements from a doctor containing the physical and clinical findings; results of laboratory tests or x-rays; the dates of examinations and tests; and statements from other individuals who were able to describe from their knowledge and personal observations in what manner the disability had become worse.

The August 2006 letter informed the Veteran that, should an increase in disability be found, a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration. The letter also contained information about assigning effective dates. Since the August 2006 letter was sent to the Veteran prior to the initial adjudication of her claim in October 2006, there exists no error in the timing of this notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

VA has also fulfilled its duty to assist the Veteran by obtaining identified and available evidence needed to substantiate the claim for an increased rating for migraine headaches, including private and VA treatment records and by affording VA examinations. Concerning this, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the September 2006 and April 2010 VA examinations obtained in this case are adequate, as they were based on physical examinations and review of the Veteran's complete VA claims file, and they provide medical information needed to address the rating criteria relevant to this case. In particular, the VA examination reports contain descriptions of the symptomatology related to the service-connected disability and address the impact of the disability on the Veteran's employment and daily life. For these reasons, the Board concludes that VA has fulfilled the duty to assist the Veteran in this case with regard to obtaining a VA examination. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); see also 38 C.F.R. § 4.2 (2010). 

Further, there is no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected disorder since she was last examined. 38 C.F.R. § 3.327(a). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95.

Additionally, the Veteran has at no time referenced outstanding records that she wanted VA to obtain or that she felt were relevant to the claim decided herein. VA has also assisted the Veteran and her representative throughout the course of this appeal by providing them with a statement of the case (SOC) and supplemental statements of the case (SSOCs), which informed them of the laws and regulations relevant to her claim. For these reasons, the Board concludes that VA has fulfilled the duty to assist the Veteran in this case. 

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. 38 C.F.R. § 4.7; but see Tatum v. Shinseki, 23 Vet. App. 152, 156 (2009) (holding that 38 C.F.R. § 4.7 is not applicable to Diagnostic Codes that involve successive rating criteria, where "the evaluation for each higher disability rating include[s] the criteria of each lower disability rating , such that if a component [i]s not met at any one level, the veteran could only be rated at the level that did not require the missing component."). 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Consistent with the facts found, the rating may be higher or lower for segments of the time under review on appeal, i.e., the rating may be "staged." See Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007).

Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the later is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("Although interest may affect the credibility of testimony, it does not affect competency to testify.").

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2).


Migraine Headaches - prior to September 28, 2007

Migraine headaches are evaluated pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8100. Under this Code, a 10 percent disability rating is warranted for characteristic prostrating attacks, averaging one in 2 months over the last several months. A 30 percent disability rating is assigned for migraine headaches with characteristic prostrating attacks occurring on an average of once a month over the last several months. A 50 percent rating is assigned for migraine with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Because the criteria of each lower disability rating is included in the higher disability rating, Diagnostic Code 8100 employs successive rating criteria. Therefore, section 4.7 is not applicable. See Tatum, 23 Vet. App. at 156 (discussing Court's opinion in Camacho v. Nicholson, 21 Vet. App. 360 (2007) and indicating that Diagnostic Code 7913, for rating diabetes mellitus, involves successive rating criteria). 

VA regulations, including the rating criteria, do not define "prostrating" as used in Diagnostic Code 8100. The Board notes that according to Webster's New World Dictionary Of American English, Third College Edition (1986), p. 1080, "prostration" is defined as "utter physical exhaustion or helplessness." A similar definition is found in Dorland's Illustrated Medical Dictionary 1367 (28th ed. 1994) in which "prostration" is defined as "extreme exhaustion or powerlessness." 

Because migraine headaches involve the symptom of head pain, the Board concludes that lay evidence is competent to describe the frequency, severity, and duration of migraine headaches, including whether they are severe enough to cause prostration and whether they are frequent, severe, and prolonged enough to result in severe economic inadaptability. Layno v. Brown, 6 Vet. App. 465, 469 (1994) (noting that lay evidence is competent with regard to facts perceived through the use of the five senses); Jandreau v. Nicholson, 492 F.3d 1372, 1377, Note 4 (Fed. Cir. 2007) (holding that sometimes a layperson will be competent to identify a medical condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer, and remanding to the Court to remand to the Board to decide whether lay evidence was competent and sufficient to establish a shoulder dislocation); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (finding veteran competent to testify to ringing in the ears (tinnitus) which is capable of lay observation); Barr v. Nicholson, 21 Vet App 303, 308-09 (2007) (lay testimony is competent to establish the presence of varicose veins); cf. Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis). Therefore, the Board finds that the Veteran's statements about her migraine symptoms constitute competent evidence for rating purposes.

Moreover, in this case, the Board finds that the Veteran's statements about the frequency and the intensity of her headaches prior to September 28, 2007, are credible. Concerning this, the Board notes that "definitions of credibility do not necessarily confine that concept to the narrow peg of truthfulness. It has been termed as 'the quality or power of inspiring belief. . . .' Credibility . . . apprehends the over-all evaluation of testimony in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence." Indiana Metal Prods. v. NLRB, 442 F.2d 46, 51-52 (7th Cir. 1971) (citations omitted). The Veteran's statements inspire belief in this case because she has not provided any conflicting statements, although her statements do show that the frequency and severity of her symptoms varied over several months prior to September 28, 2007. For example, when taking certain medications or ceasing others provided some relief for some periods of time or when her condition otherwise improved at times, she acknowledged that to her treatment providers as is reflected in VA outpatient treatment records. The treatment records also depict a person willing to try different medications and other therapeutic measures to gain relief from her symptoms. After she received the SOC in this case, she was straightforward in her June 2007 VA Form 9 substantive appeal when describing what she believed to be the degree of her disability according to the rating criteria. See June 2007 VA Form 9 where Veteran stated her belief that the frequency of her symptoms met the criteria for a 30 percent disability rating.

In regard to the frequency and severity of her headaches, VA outpatient records dated within a year before she filed her claim for increase in July 2006 show that in February 2006 she reported that her migraine headaches were "not as bad" at that time as they had been in the past. She was avoiding triggers such as chocolate, sun exposure, caffeine, and stress; the frequency of the headaches was about every two months; and they resolved in hours if treated early with medication. The treatment note indicated that she was prescribed Zomig at that time. 

In May 2006, she was seen in the VA clinic complaining of migraine headaches which she reported experiencing once weekly. She stated that the Zomig was not helping. She was prescribed Depakote daily and Vicodin as needed. In June 2006, the Veteran reported that the Depakote had decreased the frequency of the headaches, and it was noted that she had headaches 2-3 times a month which lasted for 4 to 5 hours and resolved completely within 12 hours.

A September 2006 VA examination report reflects that the Veteran reported experiencing migraine headaches 3-4 times per month with each instance lasting several hours to "all day." During her migraine headaches, the Veteran reported experiencing level 9 pain (on a 1-10 scale), nausea, vomiting, light sensitivity, sound sensitivity, right-side facial droop and dizziness for 2- 3 days following the migraine headaches. The Veteran reported that she had to lie down during her migraine headaches when they were severe. The examiner's diagnosis was migraines with worsening symptoms. See the September 2006 VA examination report. Further, VA outpatient treatment records reflect that the Veteran presented at the VA Emergency Room later that month with a migraine headache and associated blurred vision in the right eye. At that time, she reported that she had experienced two such migraine headaches "in the last month." See VA outpatient treatment records dated in September 2006. 

While a November 2006 VA outpatient treatment record reflects that Veteran's statement that her migraine headaches were "mild and scattered" at that time, a May 2007 VA outpatient treatment record reflects the Veteran's reports of migraine headaches, productive of light sensitivity, sound sensitivity, fluttering eyes, nausea, vomiting, blurry vision and facial crookedness on the left side. The Veteran failed to address the frequency of her migraine headaches at this time. See a VA outpatient treatment record dated in May 2007. However, individual outpatient treatment records from May 2007, dated on the 9th and 24th, reflect complaints of having a headache on those two days.

In her June 2007 VA Form 9 substantive appeal, the Veteran stated that she felt she qualified for the 30 percent evaluation because she did have migraines 3-4 times a month and considered them prostrating because she had to take 2-3 days off from work following them.

A July 2007 VA outpatient treatment note shows that the Veteran reported that she still was having headaches and was not sure if there had been any change as a result of a recent change in medication. 

In light of the Veteran's reports of the frequency and severity of her migraine headaches, the Board concludes that the criteria for a 30 percent disability rating have been met prior to September 28, 2007. Concerning this, the Board finds that, prior to September 28, 2007, the Veteran's migraine headaches more nearly approximated the rating criteria for the 30 percent rating, i.e., characteristic prostrating attacks occurring on average once a month over a period of several months. 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8100; See Francisco v. Brown, 7 Vet. App. 55, 58 (1994); Fenderson v. West, 12 Vet. App. 119 (1999); and Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Board has also considered whether a 50 percent disability rating may be assigned for the Veteran's service-connected migraine headaches prior to September 28, 2007. However, the Board finds that the medical evidence does not meet the criteria for a 50 percent rating, as it does not reflect that her migraine attacks, although sometimes prostrating and occurring on average once a month over several months, did not occur very frequently and were not always completely prostrating when they did occur, so as to result in severe economic inadaptability. Indeed, while the Veteran lost time at work due to her migraine headaches, it appears that she maintained employment prior to September 28, 2007. Moreover, her statements do not reflect very frequent completely prostrating and prolonged attacks during this period, but rather reflect periods where the headaches responded to medication or for other reasons were less frequent than once a month and were of mild severity. Accordingly, the Board cannot conclude that the overall disability picture more nearly approximates the criteria for a 50 percent rating for migraine headaches prior to September 28, 2007. 38 C.F.R. §§ 4.7, 4.124a, Diagnostic Code 8100. 

In reaching this decision, the potential application of various provisions of Title 38 Code of Federal Regulations have been considered, whether or not they were raised by the Veteran. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). In particular, the Board has considered the provisions of 38 C.F.R. § 3.321(b)(1). However, in this case, the record does not show that the Veteran's migraine headaches disability was so exceptional or unusual prior to September 28, 2007, so as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1) (2010).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show such an exceptional disability picture prior to September 28, 2007, that the available schedular evaluation for the service-connected disability is inadequate. A comparison between the level of severity and symptomatology of the Veteran's assigned rating with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. As discussed above, there are higher ratings available under the diagnostic code, but the Veteran's disability was not productive of such manifestations. As such, it cannot be said that the available schedular evaluation for the disability is inadequate as applied to evidence relevant to the period prior to September 28, 2007.

Based on the foregoing, the Board finds that the requirements for an extraschedular evaluation for the Veteran's service-connected migraine headaches under the provisions of 38 C.F.R. § 3.321(b)(1) were not met prior to September 28, 2007. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App. 111 (2008).


ORDER

Entitlement to a 30 percent disability rating for a service-connected migraine headaches, prior to September 28, 2007, is granted, subject to the laws and regulations controlling the award of monetary benefits.


REMAND

Unfortunately, a remand is required concerning the claims noted below. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the claims so that the Veteran is afforded every possible consideration.

Entitlement to an increased disability rating for service-connected migraine headaches, currently rated as 30 percent disabling.

The criteria for a 50 percent disability rating for migraine headaches and consideration of an extraschedular rating are both dependent upon the degree to which the Veteran's service-connected migraine headaches affect her employment. See 38 C.F.R. § 4.124a, Diagnostic Code 8100; 38 C.F.R. § 3.321(b)(1); Thun v. Peake, 22 Vet App 111 (2008). See also Pierce v. Principi, 18 Vet. App. 440, 446 (2004) (discussing the rating criteria for the 50 percent rating for migraine headaches). 

In the present case, the Veteran's employment status since September 28, 2007, is unclear. As noted above, the November 2009 Board Remand instructed the RO to obtain evidence concerning the Veteran's employment. The evidence obtained by the RO reflects that the Veteran was employed by True Green Lawn Care as of October 24, 2009. A February 2010 VA outpatient treatment record reflects that the Veteran was working 65 hours per week as a receptionist in a medical office. However, March 2010 VA outpatient treatment records and the April 2010 VA examination report reflect that the Veteran was unemployed, having been recently fired from her two part-time jobs because of absenteeism due to her migraine headaches. See VA outpatient treatment records dated in March 2010 and the April 2010 VA examination report. 

Despite this evidence, the RO has not clarified the Veteran's most recent employment, to include the date and reason for the most recent termination(s), or whether her service-connected migraine headaches have become productive of severe economic inadaptability so as to meet the requirements for a 50 percent schedular rating under Diagnostic Code 8100. The Board notes that "nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for a 50 [percent] rating." Pierce v. Principi, 18 Vet. App. 440, 446 (2004). "If 'economic inadaptability' were read to import unemployability, the appellant, if [s]he met the economic-inadaptability criterion, would then be eligible for a rating of total disability based on individual unemployability resulting from a service-connected disability (TDIU) rather than just a 50 [percent] rating." Id., citing 38 C.F.R. § 4.16. Therefore, on remand, the RO/AMC should consider whether any evidence reflects that the Veteran's migraine headaches are of such frequency and severity to have resulted in "economic inadaptability" under the criteria for the next higher or 50 percent schedular rating

Moreover, the RO/AMC should consider whether referral for extraschedular consideration under 38 C.F.R. § 3.321(b)(1) is appropriate. Under that provision, to accord justice in an exceptional case where the schedular standards are found to be inadequate, the RO is authorized to refer a case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1) (2010). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). 

In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).
The Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). As such, the RO should clarify the Veteran's employment status, to include the date and reason for the most recent termination(s), and determine whether an increased rating on a schedular basis is warranted because the rating criteria for the 50 percent rating have been met or whether, if those criteria are inadequate, referral for an extra-schedular rating for the Veteran's service-connected migraine headaches is warranted.

Entitlement to a TDIU 

As noted above in the Introduction, the Veteran has raised a claim for TDIU which has not been addressed by the RO. In Rice, the Court held that a TDIU claim is part of an increased rating claim when such claim is raised by the record. As such, the issue is properly before the Board. See Rice, supra; see also VAOGCPREC 06-96, 61 Fed. Reg. 66749 (1996).

However, the Veteran has not received notice pursuant to the VCAA as it pertains to her claim for TDIU, nor has she received the appropriate VA application form for a TDIU. Accordingly, remand is required for this assistance and any additional development indicated with regard to this claim.

Accordingly, the case is REMANDED for the following actions:

1. The RO/AMC must assure that all notice and development required by the VCAA has been accomplished, to include providing the Veteran with notice of the evidence required to substantiate her TDIU claim. A copy of the letter should be sent to the Veteran's representative. 
2. The RO/AMC should send the Veteran the VA application form for a TDIU claim. The RO/AMC should conduct whatever development is necessary and appropriate for a claim for TDIU.

3. With regard to the claim for an increased disability rating for service-connected migraine headaches, the RO/AMC should conduct whatever development is needed to determine whether the Veteran's migraine headaches have been characterized by very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, Diagnostic Code 8100; see also Pierce v. Principi, 18 Vet. App. 440, 446 (2004). The RO/AMC should attempt to obtain any evidence needed to ascertain the frequency and severity of the Veteran's migraine attacks and whether they have been of such a level of disability so as to result in severe economic inadaptability. Such evidence may include, in addition to current treatment reports, evidence of interference with economic adaptability, such as records of sick leave from employers or reasons for termination from previous employment. 

4. After conducting any additional development deemed necessary, the RO/AMC should readjudicate the claim considering all the evidence of record. In rendering its decision, the RO/AMC must also consider the provisions of 38 C.F.R. § 4.16(b), to include whether referral to the Director, Compensation and Pension Service is appropriate. If the benefits requested on appeal are not granted to the Veteran's satisfaction, the Veteran and her representative should be furnished a supplemental statement of the case and be provided an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if in order.

The purpose of this REMAND is to obtain additional development, and the Board does not intimate any opinion as to the merits of the case, either favorable or unfavorable, at this time. The Veteran has the right to submit additional evidence and/or argument on the matter or matters the Board has remanded to the regional office. Kutscherousky v. West, 12 Vet. App. 369 (1999). No action is required of the Veteran until she is notified.

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



______________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs