# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-2728

DIANNE C. TATUM, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 15, 2009                           Decided September 28, 2009)

*David T. Landers*, of Washington, D.C., for the appellant.

*Brian P. Tierney*, with whom *John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and DAVIS, *Judges*.

KASOLD, *Judge*: Veteran Dianne C. Tatum, appeals through counsel a May 23, 2007, decision of the Board of Veterans' Appeals (Board) that denied entitlement to (1) a compensable disability rating for peptic ulcer disease, and (2) an increased disability rating for hypothyroidism.

## I. OVERVIEW

Ms. Tatum served honorably on active duty in the U.S. Army from May 1979 until November 1991. Shortly after leaving service, she was granted service connection for a stomach condition diagnosed as "mild peptic ulcer disease" and for a thyroid condition diagnosed as "hyperthyroidism/Graves' disease," and awarded a compensable disability rating for each condition.[1] Over time, however, the circumstances of her disabilities changed. Specifically, medical evidence suggested Ms. Tatum suffered from a digestive system disorder, but not a peptic ulcer, and that –

---

[1] Inexplicably, the Secretary evaluated Ms. Tatum's "*hyper*thyroidism/Graves' disease" under Diagnostic Code (DC) 7903, which is the applicable DC for "*hypo*thyroidism," instead of under DC 7900, the DC for *hyper*thyroidism.

because she was receiving a particular type of treatment for her thyroid – she no longer suffered from either *hyper*thyroidism or Graves' disease. As a result, Ms. Tatum's disability rating for peptic ulcer disease was reduced from 10% disabling to noncompensable, and her thyroid condition was reclassified from *hyper*thyroidism to *hypo*thyroidism although the same DC and disability rating were retained.[2]

On administrative appeal to the Board, Ms. Tatum sought the return of a compensable disability rating for her peptic ulcer disease, and an increased disability rating for her service-connected thyroid condition. The Board found, inter alia, that a noncompensable disability rating for Ms. Tatum's peptic ulcer disease was warranted in the absence of an active ulcer disease, and found with respect to her *hypo*thyroidism that because she did not meet all of the criteria for the next higher disability rating, she was not entitled to an increased rating.

For the reasons stated below, the decision of the Board will be set aside in part, and reversed in part, and the matters remanded for further adjudication consistent with this opinion.

## II. DISCUSSION

### A. Entitlement to an Increased Rating for Hypothyroidism

A 10% disability rating for *hypo*thyroidism[3] is warranted upon a showing of "fatigability, or; continuous medication required for control;" a 30% rating is warranted upon a showing of "fatigability, constipation, and mental sluggishness;" a 60% rating is warranted upon a showing of "muscular weakness, mental disturbance, and weight gain;" and a 100% rating is warranted upon a showing of "cold intolerance, muscular weakness, cardiovascular involvement, mental disturbance [], bradycardia [], and sleepiness." 38 C.F.R. § 4.119, DC 7903.

### *1. 30% Disability Rating*

There is no dispute that Ms. Tatum suffers from fatigability and mental sluggishness, two of

---

[2] Having inexplicably and originally rated Ms. Tatum under DC 7903 for *hypo*thyroidism, *see supra* note 1, the Board continued to rate Ms. Tatum under DC 7903 after reclassifying her service-connected disability from *hyper*thyroidism to *hypo*thyroidism.

[3] In light of the Court's decision to set aside and remand the Board's findings regarding entitlement to a higher disability rating for *hypo*thyroidism, the Court will not address Ms. Tatum's alternative argument that she might be entitled to a higher disability rating under DC 7900 for *hyper*thyroidism, for which she originally was granted service connection.

the three criteria listed for consideration of a 30% disability rating under DC 7903, and that there also was evidence that she experienced weight gain, one of the three criteria for consideration of a 60% disability rating. However, the Board denied Ms. Tatum entitlement to a 30% disability rating because it found that she did not suffer from constipation, and that a 30% disability rating was permitted only if all three symptoms were present. Ms. Tatum argues that in finding that she did not suffer from constipation, the Board failed to discuss her own statements that she suffered from constipation, which failure she further argues renders the Board's statement of reasons or bases inadequate. Ms. Tatum also argues that the Board erred in concluding that all three symptoms were necessary for the award of a 30% disability rating and that such a conclusion eviscerates the meaning of 38 C.F.R. § 4.7 (2009), which states: "Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating." The Secretary disputes both arguments.

The record supports Ms. Tatum's argument that the Board failed to discuss the credibility of her statements that she suffers from constipation (Record (R.) at 1026), and that the Board's statement of reasons or bases is inadequate. Suffice it to say, the credibility of a person's assertion of such a personal affliction is a key consideration with regard to any finding that the person does or does not suffer from such affliction. The Board's failure to discuss Ms. Tatum's statement, combined with a failure to address her credibility, renders the Board's statement of reasons or bases inadequate as to its finding on this issue. *See Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (Board has the duty to determine the credibility and probative weight of the evidence); *see also Allday v. Brown*, 7 Vet.App. 517, 527 (1995) ("Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran."); *Gabrielson v. Brown*, 7 Vet. App. 36, 40 (1994) ("fulfillment of the reasons or bases mandate requires the [Board] to set forth the precise basis for its decision, to analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant in support of the claim, and to provide a statement of reasons or bases for rejecting any such evidence").

Additionally, the record and the law support Ms. Tatum's argument that the Board erred when it concluded that all three symptoms are required for the award of a 30% disability rating under DC

3

7903. In arguing that the Board correctly determined that all three symptoms were required, and that § 4.7 is therefore inapplicable, the Secretary relies on the Court's holding in *Camacho v. Nicholson* and argues that the presence of the conjunctive "and" joining particular rating criteria within a DC requires that all of those rating criteria must be met to establish entitlement to the corresponding disability rating. *See Camacho*, 21 Vet.App. 360 (2007).[4] However, *Camacho* did not render the expansive holding that the Secretary now contends that it did.

*Camacho* involved the successive rating criteria of 38 C.F.R. § 4.119, DC 7913, pertaining to diabetes mellitus, wherein a 10% disability rating is warranted when the veteran's diabetes are "manageable by restricted diet only;" a 20% rating where the diabetes require "insulin and restricted diet, or; oral hypoglycemic agent and restricted diet;" a 40% rating where the diabetes require "insulin, restricted diet, and regulation of activities;" and a 60% rating requires "insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions." 38 C.F.R. § 4.119, DC 7913 (2009). Simply stated, the evaluation for each higher disability rating included the criteria of each lower disability rating, such that if a component was not met at any one level, the veteran could only be rated at the level that did not require the missing component. The Court in *Camacho* affirmed the Board's finding that "regulation of activities" had not been established, and consequently, that the appellant was not entitled to a disability rating higher than 20%. As was noted in *Camacho*, to permit otherwise and award a 40% rating where only two out of the three criteria were met, would eviscerate the need for a 20% rating since the symptoms established for either rating might be the same. *Camacho*, 21 Vet. App. at 366-367. Under the specific circumstances in the *Camacho* case, § 4.7 was not for application.

Contrasted with DC 7913, however, DC 7903 does not involve successive rating criteria.

---

[4]At oral argument, the Secretary suggested that § 4.7 applies only to the determination of the appropriate DC to be assigned to a given service-connected disability, rather than the individual disability rating. However, this argument is wholly unpersuasive. By its very terms, § 4.7 refers to the evaluation and "criteria required for" a higher "rating," with nothing to indicate it applies only to higher disability ratings available under a different DC. Moreover, in numerous cases the Court has referenced the applicability of § 4.7 to higher ratings within the same DC. *See*, *e.g.*, *Pierce v. Principi*, 18 Vet.App. 440, 445 (2004) (discussing § 4.7 in the context of an increased rating claim); *Deluca v. Brown*, 11 Vet.App. 202, 205 (1995) (same); *Baker v. West*, 11 Vet.App. 163, 167 (1998) (quoting the Board's own application of § 4.7 to the veteran's claim for a higher disability evaluation).

Instead, as noted above, a 10% disability rating is warranted upon a showing of "fatigability, or; continuous medication required for control;" a 30% rating is warranted upon a showing of "fatigability, constipation, and mental sluggishness;" and a 60% rating is warranted upon a showing of "muscular weakness, mental disturbance, and weight gain." As a result, and contrary to the diagnostic criteria required for diabetes mellitus, a veteran could potentially establish *all* of the criteria required for either a 30% or 60% disability rating, without establishing *any* of the criteria for a lesser disability rating. Given the differences in the rating criteria involved, *Camacho* is not for application with respect to Ms. Tatum's claim. Moreover, as Ms. Tatum argues, the Board's conclusion that § 4.7 is not for application when the criteria for higher disability ratings are variable, and not simply cumulative, would eviscerate the meaning of § 4.7, which, as noted above, requires the higher disability rating to be awarded when "the disability picture more nearly approximates the criteria required for that rating." Such a conclusion would also eviscerate the meaning of 38 C.F.R. § 4.21 (2009), a regulation which explains that "it is not expected. . . that all cases will show all the findings specified [in an applicable DC]."

In this instance, the Board found that Ms. Tatum has both fatigability and mental sluggishness. *See* R. at 13. Because fatigability and mental sluggishness are two of the three criteria listed for a 30% disability rating, the question clearly arises as to whether a 30% disability is more appropriate than a 10% disability rating, which requires only fatigability. Accordingly, § 4.7 necessarily is implicated in this case. Because the Board concluded, erroneously, that all three criteria were necessary to establish entitlement to a 30% disability rating, it failed to consider whether the effects of Ms. Tatum's disability warranted a 30% disability rating under § 4.7, frustrating judicial review. *See Allday*, *supra*; *see also Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991) (stating that the Board must consider and discuss all applicable provisions of law and regulation where they are made "potentially applicable through the assertions and issues raised in the record"). In light of the inadequacy of the Board's decision with regard to the evidence of constipation, as well as the application of § 4.7 and § 4.21, remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

*2. Disability Rating Greater Than 30%*

When a veteran files an increased rating claim, it generally is presumed that he or she is seeking the maximum benefit allowed by law.  *See AB v. Brown*, 6 Vet.App. 35, 38 (1993) (presuming that a claimant is seeking the maximum benefits allowed by law and regulation); *see also Bradley v. Peake*, 22 Vet.App. 280, 294 (2008) (Secretary required to maximize benefits); 38 C.F.R. § 3.103(a) (2009) (noting VA's obligation to "render a decision which grants every benefit that can be supported in law").  In this instance, in addition to the findings of the Board that there is evidence of weight gain and that Ms. Tatum suffers from fatigability and mental sluggishness, as discussed above, the record also contains evidence that she suffers from both muscular weakness and mental disturbance.  *See* R. at 1101, 1150-51.  Despite the fact that a 60% disability rating is warranted upon a showing of these symptoms (muscular weakness, mental disturbance, and weight gain), and therefore its application was reasonably raised by the evidence, the Board failed to explain why a 60% disability rating was not warranted.  *See Beverly v. Nicholson*, 19 Vet.App. 394, 405 (2005) (stating that "the Board is required to adjudicate all issues reasonably raised by a liberal reading of the appellant's substantive appeal,  including all documents and oral testimony in the record prior to the Board's decision." (citing *Brannon v. West*, 12 Vet.App. 32, 34 (1998))); *Urban v. Principi*, 18 Vet.App. 143, 145 (2004) (per curiam) (recognizing the Board's obligation to consider "all reasonably raised matters regarding the issue on appeal"), *aff'd*, 128 F. App'x 124 (Fed. Cir. 2005) (per curiam); *Schafrath*, *supra*.

Because the Board has not weighed the evidence of muscular weakness, mental disturbance, and weight gain, or explained why a 60% disability rating is not warranted in this instance, judicial review of this matter is frustrated and remand is warranted.  *See Allday* and *Tucker*, both *supra*; *see also Clemons v. Shinseki*, 23 Vet.App. 1 (2009) (Court has jurisdiction to remand any matters reasonably raised below that Board should have but failed to decide).

B.  Entitlement to a Compensable Rating for Peptic Ulcer Disease

Based on the record on appeal, the Board's finding that Ms. Tatum no longer has an ulcer and that pursuant to 38 C.F.R. § 4.114, DC 7305 (Ulcer, duodenal), a compensable rating is not warranted, for such a disability, *standing alone*, is plausible and not clearly erroneous.  *See Allday*, *supra*; *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."' (quoting *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948))); *see also Johnston v. Brown*, 10 Vet.App. 80, 84 (1997) (holding the Board's decision regarding the degree of disability under the rating schedule is a finding of fact subject to the "clearly erroneous" standard of review).  However, this does not end the matter. Indeed, Ms. Tatum does not argue that she presently has an ulcer.  Rather, the record on appeal shows that (1) Ms. Tatum originally sought disability compensation for "duodenitis with duodenal erosion" and "mild esophagitis"(R. at 571), which essentially are problems of the gastrointestinal system,[5] and (2) the Secretary determined that she suffered from peptic ulcer disease (R. at 580-81, 584).  Ms. Tatum therefore asserts that (1) she continues to suffer from gastrointestinal problems, and (2) if she no longer has an ulcer, the Board should have considered the propriety of changing the DC under which her gastrointestinal disability is rated – as it did with regard to her *hyper*/*hypo*thyroidism – and then should have assigned the appropriate disability rating under the new DC.  Moreover, at oral argument, the Secretary agreed that the Board's statement was inadequate with regard to its decision to reduce Ms. Tatum's rating for peptic ulcer disease to a noncompensable level without providing more discussion of the proper DCs and reconciliation of the varying diagnoses.

In this instance, however, the Board's failure to consider or adequately discuss all the applicable laws and regulations in reducing Ms. Tatum's disability rating renders its decision "not in accordance with the law."  38 U.S.C. § 7261(a)(3)(A) (2009).  Specifically, we note that the rating schedule explicitly recognizes the unique characteristics of diseases of the digestive system and that they typically produce a common disability picture.  *See* 38 C.F.R. § 4.113 (2009).  Moreover, the medical examinations in the record, relied on in part by the Board to determine that Ms. Tatum no longer has an active ulcer, reflect several diagnoses for her gastrointestinal problems, including gastroesophageal reflux disease (GERD), gastritis, esophagitis, acid peptic disease, and hiatal

---

[5]Duodenitis: inflammation of the duodenal mucosa; duodenum: the first or proximal portion of the small intestine.  *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 580-81 (31st ed. 2007).  Esophagitis: inflammation of the esophagus; Esophagus: the musculomembranous passage extending down from the pharynx and emptying into the stomach at the cardiac opening, passing through the diaphragm at the esophageal hiatus.  *Id*. at 655-56.

hernia.[6] *See* R. at 606, 636, 678, 863, 892, 1032.[7]

We further note that 38 C.F.R. § 3.344 (2009), addressing stabilization of disability evaluations, directs rating officials in cases affected by changes in medical findings or diagnoses to effect the "greatest degree of stability of disability evaluations," and when there is doubt as to a change in diagnosis, to retain the original diagnosis with the new diagnosis in parentheses. *See* 38 C.F.R. § 3.344(a), (b). However, while the Board generally found that Ms. Tatum continues to have gastrointestinal problems, the Board reduced her disability rating to a noncompensable level simply because it found she no longer had an active ulcer. In so doing, the Board failed to adequately discuss the presence of the other diagnoses in the record as they relate to her current and active gastrointestinal problems, and the Board failed to consider whether she should now be rated under a new DC associated with a changed diagnosis. *See* 38 C.F.R. § 4.13 (2009) (when a previously assigned diagnosis has changed, "[t]he aim should be the reconciliation and continuance of the diagnosis or etiology upon which service connection for the disability has been granted.").

Because this matter involves a rating reduction, and the Board failed to consider the applicable laws and regulations before finding that Ms. Tatum was no longer entitled to a compensable disability rating, the Board's finding is rendered "void ab initio" and "not in accordance with the law," *see Schafrath*, 1 Vet.App. at 595-96, and the decision of the Board as to this matter will be reversed with direction that the Board reinstate the prior rating. *Kitchens v. Brown*, 7 Vet.App. 320, 325 (1995); *Brown v. Brown*, 5 Vet.App. 413, 422 (1993) (holding Board's reduction of disability rating without observance of applicable law and regulation is void ab initio and setting aside Board decision as "not in accordance with law"); *Dofflemyer v. Derwinski*, 2 Vet.App. 277, 282

---

[6]The Court notes that the RO denied Ms. Tatum service connection for esophagitis in November 1991. R. at 580-81, 584. Ms. Tatum did not perfect her appeal of the RO's decision, and it became final. In December 1997 and June 1999, Ms. Tatum filed requests to reopen her claim of service connection for esophagitis. R. at 598-603. Both of these requests were denied. Supplemental R. at 1-3, 9-11. Ms. Tatum did not appeal these decisions, and they became final.

[7]The record also reflects, inter alia, complaints of a "bad stomach" and a diagnosis of gastritis in January 1988 (R. at 331), treatment for complaints of dyspepsia, digestive problems, sharp epigastric pain, bloating, and gassy pains in June 1991, with diagnoses of mild esophagitis, duodenitis, and duodenal erosion. R. at 156, 445, 477-79, 487-89, 493. Moreover, Ms. Tatum's September 1991 separation examination reflects she experienced both "Frequent Indigestion" and "Stomach, liver, or intestinal trouble" in service. R. at 435. Based on treatment Ms. Tatum received in July, August, and October 1991 for mild peptic ulcer disease (PUD), she was awarded service connection for that disability. R. at 439, 551, 553, 580-81.

(1992) (same); *see also Horowitz v. Brown*, 5 Vet.App. 217, 224 (1993) (with regard a rating reduction Board decision, reinstating the prior rating because "the reduction was made without observance of law," although vacating instead of reversing the Board decision).

### III. CONCLUSION

For the foregoing reasons, the May 23, 2007, decision of the Board with respect to entitlement to a 30% disability rating for hypothyroidism is SET ASIDE, and the matter REMANDED for the determination of whether a higher disability rating is warranted, and regarding entitlement to a compensable disability rating for peptic ulcer disease, that matter is REVERSED and REMANDED for further action consistent with this opinion, including reinstatement of Ms. Tatum's prior rating. These matters are to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112; *see also Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (appellant may present additional evidence and argument in support of matters remanded, and the Board must consider any evidence and argument so presented).