Citation Nr: 1814061 
Decision Date: 03/08/18 Archive Date: 03/14/18

DOCKET NO. 14-15 940 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to an initial increased disability rating in excess of 10 percent for degenerative joint disease of the right knee.

2. Entitlement to an increased disability rating in excess of 70 percent for an acquired psychiatric disorder, to include, but not limited to, anxiety and depression.

3. Entitlement to a compensable disability rating for allergic rhinitis.

4. Entitlement to an increased disability rating in excess of 50 percent for obstructive sleep apnea.

5. Entitlement to service connection for a lumbar spine disorder.

6. Entitlement to service connection for sciatica of the bilateral lower extremities, to include as secondary to claimed lumbar spine disorder.

7. Entitlement to service connection for bilateral hearing loss.

WITNESSES AT HEARING ON APPEAL

The Veteran, the Veteran's wife


ATTORNEY FOR THE BOARD

K.C. Spragins, Associate Counsel


INTRODUCTION

The Veteran had active service in the United States Navy from December 1990 to September 1994, and in the Army from December 1997 to April 2003.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an April 2012 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia.

In a January 2016 decision, the Board remanded the case to the Agency of Original Jurisdiction (AOJ) for additional development. The case has since been returned to the Board for appellate review.

The Board notes that a March 2009 rating decision finally denied entitlement to service connection for otitis media in the right and left ear. In Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008), the United States Court of Appeals for the Federal Circuit found that a claim for one diagnosed disease or injury cannot be prejudiced by a prior claim for a different diagnosed disease or injury when it is in an independent claim based on distinct factual bases. As there is no indication that hearing loss was encompassed by the prior service connection claims for otitis media in the right and left ear, the Board finds that that the current service connection claim for bilateral hearing loss is based on a separate and distinct disability. Thus, it is appropriate for the Board to consider the claim de novo.

The Veteran testified at a Decision Review Officer (DRO) hearing in June 2013. A transcript from that proceeding is associated with the Veterans Benefits Management System (VBMS) folder.

The Board notes that the Veteran also requested a Board hearing in his April 2014 VA Form 9. The January 2016 Board decision remanded the case in order for the AOJ to schedule the Veteran for a hearing. Although letters dated in March and April of 2017 informed the Veteran that his hearing was scheduled for June 2017, he did not attend the hearing. In addition, he has not requested that the hearing be rescheduled or provided any good cause for not attending the hearing. Consequently, his Board hearing request is deemed to be withdrawn. 38 C.F.R. § 20.704(d).

In addition, the record shows that the Veteran was previously represented by attorney David L. Huffman. However, David L. Huffman is no longer accredited to represent claimants in claims before VA. A September 2014 letter advised the Veteran of this fact and notified him of his right to seek other representation or proceed without representation. To date, the Veteran has not appointed another representative.

Lastly, a May 2017 note in VBMS reflects that the Veteran expressed his intention to withdraw the claims on appeal over the phone to a VA employee. However, the regulations provide that a motion to withdraw a claim must be in writing. See 38 C.F.R. § 20.204(b) (2017). As the Veteran did not submit a motion to withdraw the claims in writing, the Board must continue to address his claims.

The appeal is REMANDED to the AOJ. VA will notify the Veteran if further action is required.


REMAND

In this case, a remand is required to obtain outstanding VA treatment records. In statements dated in January 2013 and April 2014, the Veteran's previous representative noted that he had received relevant treatment records from the Louis A. Johnson VA Medical Center dated from January 30, 2012 to June 4, 2013; and from June 28, 2013 to March 7, 2014. The prior representative added that it was his understanding that VA would obtain these treatment records electronically. However, the record does not reflect that the RO attempted to obtain these relevant VA treatment records. In similar statements dated in January and February of 2012, the Veteran's former representative noted that he was enclosing treatment records from the Clarksburg VA Medical Center dated from August 7, 2009 to January 19, 2012; and from the VA Pittsburgh Health Care System dated from February 3, 2010 to June 2, 2011. He again noted that these records were relevant to the Veteran's claim. Although the RO indicated that it had reviewed these records in the April 2012 rating decision and April 2014 statement of the case, they are not currently associated with the claims file. The record shows that the Veteran also reported receiving treatment from the Cheyenne VA Medical Center, but the claims file does not include records from this facility. See June 2013 DRO Hearing Transcript (Tr.), page 18. As such, all relevant and outstanding VA treatment records should be obtained on remand. 38 C.F.R. § 3159; Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

The Veteran's increased rating claim for his right knee disability must also be remanded to obtain an adequate VA examination that provides the necessary information to evaluate the disability under the applicable rating criteria. Barr v. Nicholson, 21 Vet. App. 303 (2007). When the Veteran's right knee disability was last examined in April 2012, the VA examiner did not provide range of motion findings for the left knee or test for the presence of pain in passive motion. 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing, and, if possible, with range of motion measurements of the opposite undamaged joint. Correia v. McDonald, 23 Vet. App. 158, 168-69 (2016). As such, another VA examination should be obtained on remand.

In addition, a remand is necessary to provide the Veteran with updated VA examinations to determine the current severity and manifestations of his allergic rhinitis and psychiatric disability. These disabilities were last examined during VA examinations conducted in February and April of 2012, and the Veteran's subsequent testimony during the June 2013 DRO hearing suggests that they have worsened in severity since that time. Regarding the Veteran's allergic rhinitis, the February 2012 VA examiner determined the Veteran did not have a greater than 50 percent obstruction of the nasal passage on both sides, or a complete obstruction on one side due to rhinitis. However, the Veteran testified that his nose was always blocked, and he could only breathe from one nostril at a time. See Tr., page 18. In terms of his psychiatric disability, the April 2012 VA examination report reflects that no deficiencies were found in the Veteran's ability to maintain his hygiene. In contrast, the June 2013 hearing testimony indicates that the Veteran did not care about his hygiene and only brushed his teeth when reminded, approximately once every three weeks. See Tr., page 23-24. Thus, contemporaneous VA examinations are needed. See Snuffer v. Gober, 10 Vet. App. 400 (1997).
 
The Board also finds that a remand is required for the Veteran's service connection claim for bilateral hearing loss to obtain another VA medical opinion. In conjunction with a March 2012 VA examination, an examiner provided a negative nexus opinion. The examiner based the opinion on the normal results of a 2002 audiogram, the unavailability of a discharge examination from 2003, and the fact that the Veteran worked in carpentry for two years after service. However, the Veteran has since described receiving significant noise exposure during active service, and he noticed symptoms of tinnitus at that time. See Tr., page 11-13. The Veteran also stated that he did not recall being examined prior to his discharge in 2003. The Board finds that an examiner should consider these reports in an additional medical opinion. The Board also notes that based on the criteria of 38 C.F.R. § 3.385, the March 2012 VA examination showed that a hearing loss disability was only present in the right ear. As the claim is already being remanded for additional development, the Board finds that the Veteran should be afforded another VA examination to determine if any left ear hearing loss disability is present.

An additional medical opinion is also needed for the Veteran's service connection claims for a lumbar spine disorder and sciatica of the bilateral lower extremities. The Veteran was afforded a VA examination in April 2012, and the examiner noted that he had diagnoses for lumbar spine degenerative joint disease and sciatica of the bilateral lower extremities. However, the examiner stated that he could not provide a medical opinion without resorting to mere speculation as the Veteran had not yet submitted records of his treatment in Ireland, where he reported being diagnosed with sciatica. The record reflects that the Veteran subsequently submitted these treatment records from the Keogh Practice dated from February 2005 to October 2006. Consequently, a VA examiner should review these records and provide a medical opinion upon remand. The record has also raised the theory that the Veteran's sciatica is secondary to his claimed lumbar spine disorder. Thus, this issue is inextricably intertwined with his service connection claim for a lumbar spine disorder. See Harris v. Derwinski, 1 Vet. App. 180 (1991).

Accordingly, the case is REMANDED for the following action:

1. The AOJ should contact the Veteran and inform him that based on his May 2017 phone call to the RO it appeared he wished to withdraw his appeal, and that if that is so, he should submit his withdrawal in writing, and he should be provided with the correct address and fax number. 

2. For any issues the Veteran does not wish to withdraw, the AOJ should request that the Veteran provide or identify medical records that are outstanding and relevant to his claims on appeal.

After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate these records with the claims file. 

The AOJ should also secure any outstanding, relevant VA medical records, to include the following: (1) treatment records from the Louis A. Johnson VA Medical Center dated since January 2012; (2) treatment records from the Clarksburg VA Medical Center dated since August 2009; (3) treatment records from the VA Pittsburgh Health Care System dated since February 2010; and (4) treatment records from the Cheyenne VA Medical Center.

2. After completing the preceding development in paragraph 1, the Veteran should be afforded a VA examination to ascertain the current severity and manifestations of his degenerative joint disease of the right knee. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file and to comment on the severity of the Veteran's service-connected disability.

It should be noted that the Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptoms. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should report all signs and symptoms necessary for rating the degenerative joint disease of the right knee under the rating criteria. 

In particular, the examiner should provide the range of motion in degrees and test the range of motion in (1) active motion, (2) passive motion, (3) weight-bearing, and (4) nonweight-bearing. This testing must be conducted for both the joint in question and any paired joint. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why this is so.

The examiner should also indicate whether there whether there is any ankylosis; dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion to the joint; or, symptomatic removal of semilunar cartilage. He or she should additionally address whether the Veteran has recurrent subluxation or lateral instability, and if so, comment as to whether such symptomatology is slight, moderate, or severe. The examiner should further state whether there is any malunion or nonunion of the tibia and fibula.

The examiner is also asked to evaluate any scars associated with the Veteran's degenerative joint disease of the right knee.

The presence of objective evidence of pain, excess fatigability, incoordination, and weakness should also be noted, as should any additional disability (including limitation of motion) due to these factors. 

In addition, based on examination results and the Veteran's documented history and assertions, the examiner should indicate whether, and to what extent, the Veteran experiences functional loss due to pain and/or any of the other symptoms noted above during flare-ups and/or with repeated use; to the extent possible, the examiner should express any such additional functional loss in terms of additional degrees of limited motion. In this regard, even if the Veteran is not experiencing a flare-up at the time of the examination, the examiner must elicit relevant information as to the Veteran's flares or ask him to describe the additional functional loss, if any, he suffers during flares and then estimate the Veteran's functional loss due to flares based on all the evidence of record-including the Veteran's lay information-or explain why he or she could not do so.

3. After completing the preceding development in paragraph 1, the Veteran should be afforded a VA examination to ascertain the current severity and manifestations of his service-connected acquired psychiatric disorder, to include, but not limited to, anxiety and depression. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file.

The Veteran is competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should report all signs and symptoms necessary for rating the Veteran's disability under the General Rating Formula for Mental Disorders. The findings of the examiner should address the level of social and occupational impairment attributable to the Veteran's service-connected acquired psychiatric disorder, to include, but not limited to, anxiety and depression. 

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. 

4. After completing the preceding development in paragraph 1, the Veteran should be afforded a VA examination to ascertain the current severity and manifestations of his service-connected allergic rhinitis. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file.

The Veteran is competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should report all signs and symptoms necessary for rating the Veteran's allergic rhinitis. In particular, he or she should indicate whether the Veteran has polyps and whether there is a greater than 50 percent obstruction of the nasal passage on both sides or a complete obstruction on one side.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. 

5. After the preceding development in paragraphs 1 and 2 is completed, obtain a VA medical opinion from a qualified examiner on the etiology of the Veteran's lumbar spine disorder. The claims file must be made available to the examiner. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions. A clear explanation for all opinions based on specific facts for the case as well as relevant medical principles is needed. If an examination is deemed necessary, one must be provided.

The Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptoms. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

First, the examiner should clearly identify all current lumbar spine disorders. The examiner should specifically indicate whether the Veteran has degenerative disc disease. If not, the examiner should address the prior diagnosis of record and explain why such a diagnosis is not warranted.

For each identified disorder, the examiner should opine as to whether it is at least as likely as not (a 50 percent or greater probability) that the disorder manifested during, or is otherwise related to, a period of active service.

In providing an opinion, the examiner should consider the following: (1) the Veteran's June 2013 DRO hearing testimony indicating that his back problems were related to low back strain from sit ups during boot camp, as well as a fall from a Humvee that occurred during his active service in Kosovo; (2) the assessment of lumbar strain in a May 1999 VA treatment record related to the Veteran's complaint of low back pain for the last two months that began after he turned to the left, without lifting, while shopping; (3) the report from the Veteran's STRs that in February 2002, the Veteran received treatment from a Department of Defense Military Treatment Facility for lumbago on February 9, 2002; and (4) the February 14, 2002 STR that noted the Veteran's complaint of mechanical low back pain (MLBP).

6. After the preceding development in paragraph 1 is completed, obtain a VA medical opinion from a qualified examiner on the etiology of the Veteran's sciatica of the bilateral lower extremities. The claims file must be made available to the examiner. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions. A clear explanation for all opinions based on specific facts for the case as well as relevant medical principles is needed. If an examination is deemed necessary, one must be provided.

The Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptoms. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

For the Veteran's diagnosed sciatica of the bilateral lower extremities, the examiner should opine as to the following questions:

(a) Whether it is at least as likely as not (a 50 percent or greater probability) that the disorder manifested during, or is otherwise related to, a period of active service.

(b) Whether it is at least as likely as not (a 50 percent or greater probability) that the disorder was caused or aggravated by any identified lumbar spine disorders.

7. After completing the preceding development in paragraph 1, provide the Veteran with a VA examination in connection with his service connection claim for bilateral hearing loss. The entire claims file should be made available to and be reviewed by the examiner, and it should be confirmed that such records were available for review. Any indicated tests and studies must be accomplished, and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided.

The examiner must elicit a history that addresses the Veteran's noise exposure during and since service; in addition to the onset and progression of the Veteran's hearing loss symptoms. The Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptoms. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

For any identified right and/or left ear hearing loss, the examiner must provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that such disorder manifested during a period of active service, manifested to a compensable degree within one year of the Veteran's discharge from a period of active service, is otherwise related to a period of active service.

If the examiner determines that it is less likely than not related to service, the examiner should explain why, including why the delayed onset of hearing loss is significant. 

8. Review each examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998).

9. After completing the above actions and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, to include whether additional examinations or opinions are necessary, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran. After the Veteran has had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112.





_________________________________________________
GAYLE E. STROMMEN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C. § 7252, only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).