# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1093

WOLFGANG A. PETERMANN, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 13, 2018                                    Decided August 10, 2018)

*Christian A. McTarnaghan* was on the brief, with *April Donahower*, both of Providence, Rhode Island, for the appellant.

*Nathan P. Kirschner*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, ALLEN, and TOTH, *Judges.*

GREENBERG, *Judge*, filed the opinion of the Court. TOTH, *Judge*, filed a dissenting opinion.

GREENBERG, *Judge*: The appellant, Wolfgang A. Petermann, appeals through counsel that part of a February 11, 2016, Board of Veterans' Appeals (Board) decision that declined to refer the appellant's service-connected diabetes mellitus (diabetes), rated at 40% disabling, for extraschedular consideration.[1] Record (R.) at 2-13. On June 29, 2017, the Court issued a single-judge decision vacating that part of the February 11, 2016, decision on appeal and remanding the matter for readjudication. *See Petermann v. Shulkin*, No. 16-1093, 2017 WL 2805880, at *3 (U.S. Vet. App. June 29, 2017) (mem. dec.). On July 20, 2017, the Secretary filed a motion for single-judge reconsideration, or in the alternative, panel review. This matter was submitted for panel

---

[1] The Board also granted a 40% disability rating, but no higher for the appellant's service-connected diabetes on a schedular basis. To the extent this finding is favorable, the Court will not disturb it. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). The appellant does not challenge the schedular determination, and the Court deems this matter abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc) (holding that, where an appellant abandons a claim, the Court will not address it). The Board also remanded the matter of entitlement to an initial compensable rating for nephropathy with hypertension. That matter is not currently before the Court. *See Hampton v. Gober*, 10 Vet.App. 481, 482 (1997).

consideration and oral argument was held. The Court will withdraw the June 29, 2017, memorandum decision and issue this decision in its stead. Because the Board failed to provide an adequate statement of reasons or bases for denying referral for extraschedular consideration of the appellant's service-connected diabetes, the Court will vacate that part of the February 2016 decision on appeal and remand the matter for readjudication.

## I.

The appellant served on active duty in the U.S. Army from September 1988 to September 2010, primarily as an intelligence officer. R. at 136. During service he attained the rank of lieutenant colonel and was awarded the Legion of Merit among other commendations. R. at 136. At his July 2010 predischarge examination, the appellant reported suffering from diabetic ketoacidosis. R. at 234. The appellant stated that he experienced hypoglycemic reactions and required hospital treatment on average at least once a year. *Id.* He described tingling and numbness in his hands resulting from low blood sugar. *Id.* The examiner noted that "the insulin used by claimant is Apidra pump administered continuously and [t]he insulin used by claimant is Symalyn administered 3 times per day." *Id.*

In May 2011, the appellant was granted service connection for diabetes, and awarded a 20% disability rating. R. at 213.

In October 2015, the appellant testified at a Board hearing that he had not been hospitalized the prior year for hypoglycemic reactions, but that he had been treated by a paramedic in 2010. R. at 78. He added that he sought ongoing treatment for his diabetes, which included communicating with his physician by email and fax, and speaking regularly with the physician on the telephone. R. at 79.

In February 2016, the Board issued the decision currently on appeal, granting a 40% initial disability rating, but no higher, for diabetes. R. at 2-13. In reaching this determination, the Board found that the appellant's diabetes "has been productive of insulin, restricted diet, and regulation of activities." R. at 3. The Board denied a higher rating on a schedular basis, in relevant part, because it found that

> the evidence of record fails to demonstrate that there is any evidence of [diabetes] requiring insulin, restricted diet, and regulation of activities *with* episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per

year or twice a month visits to diabetic care provider, plus complications that would not be compensable if separately evaluated.

R. at 7 (emphasis in original). The Board declined to refer the matter for extraschedular consideration because it found that the

the manifestations of the [v]eteran's [diabetes] are contemplated by the schedular criteria. The criteria practicably represent the average impairment in earning capacity resulting from the [v]eteran's service-connected [diabetes] such that he is adequately compensated for "considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability."

R. at 9 (citing 38 C.F.R. § 4.1 (2015)). The appellant was found to be competent and credible to testify regarding "the effects of his current symptoms of his [diabetes] on his daily life." R. at 8.

**II.**

The appellant argues that the Board's finding that all his diabetic symptoms were contemplated by the assigned 40% disability rating, is contrary to the facts and misinterprets the extraschedular referral analysis. Appellant's Brief at 6-11. The appellant's management of his diabetes required frequent communication with a physician and the use of an insulin pump, symptoms that are contemplated by the higher 60% and 100% disability rating criteria under Diagnostic Code (DC) 7913. *Id.* The appellant acknowledges that a claimant may not attain a higher rating by more nearly approximating that rating under DC 7913 because of its successive criteria. *See id.* at 10 (citing *Tatum v. Shinseki*, 23 Vet.App. 152 (2009); *Camacho v. Nicholson*, 21 Vet.App. 360 (2007)). He argues that the severity of his diabetes is not adequately contemplated by his existing rating and extraschedular referral is warranted to consider his uncompensated symptoms. *Id.*

The Secretary responds that the Board did not err in declining to refer the appellant's service-connected diabetes for extraschedular consideration. Secretary's Brief at 4. According to the Secretary, the relevant question when determining whether the first prong of the *Thun v. Peake*, 22 Vet.App. 111 (2008) analysis is met is whether the manifestations of a disability are contemplated by the criteria of the entire DC at issue, not whether the manifestations of a disability are contemplated by the criteria of the particular rating assigned. *Id.* at 8-11. Because § 3.321(b)(1), title 38, Code of Federal Regulations, allows for an extraschedular evaluation

"where the schedular *evaluations are* found to be inadequate," the Government contends, the adequacy of an assigned rating is measured against "multiple available evaluations rather than the singular evaluation that is assigned." Secretary's Motion for Reconsideration at 3 (emphasis in original). It is the Secretary's position that allowing the appellant extraschedular referral for diabetes based on symptoms contemplated at higher ratings of DC 7913 would "eviscerate" the Court's holding in *Camacho* regarding the successive nature of the criteria under this DC and the requirements to receive a schedular rating under this DC. Secretary's Brief at 11.

## III.

Under Diagnostic Code (DC) 7913 for diabetes, the rating criteria for a 20% disability rating require "insulin and restricted diet, or; oral hypoglycemic agent and restricted diet." 38 C.F.R. § 4.119, DC 7913 (2017). A 40% disability rating is assigned for diabetes, which "[r]equire[s] insulin, restricted diet, and regulation of activities." *Id.* A 60% disability rating requires "insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated." *Id.* A 100% disability rating is warranted when

> [r]equiring more than one daily injection of insulin, restricted diet, and regulation of activities, (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or twice a month visits to a diabetic care provider, plus either progressive loss weight and strength or complications that would be compensable if separately evaluated.

*Id.* The rating criteria under DC 7913 are successive and therefore, to establish a given disability rating, all the rating criteria for that and for lower ratings must be met. *See Camacho*, 21 Vet.App. 360.

"The goal of the entire rating process is to appropriately compensate veterans." *King v. Shulkin*, 29 Vet.App. 174, 179 (2017). As of the date of the February 2016 Board decision here at issue, VA regulation provided that for exceptional cases,

> where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension . . . is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases

4

is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b)(1) (2015).[2]

Determining whether referral for extraschedular consideration is warranted requires a "comparison between the *level of severity* and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Thun*, 22 Vet.App. at 115 (emphasis added). The Court held in *King* that "the availability of higher schedular ratings plays no role in an extraschedular analysis and it is inappropriate for the Board to deny extraschedular referral on this basis." 29 Vet.App at 181. This was a general holding concerning the relationship between schedular and extraschedular rating. The Court provided the following relevant hypothetical as a general example:

> [A]ssume that a veteran has a disability that awards compensation at a 30% rating for veterans with symptoms "a" and "b." Assume also that this disability is awarded a 50% rating for veterans with symptoms "a," "b," "x," and "z." Now presume a veteran is before the Board who is rated at 30% and has sufficient medical evidence exhibiting symptoms "a," "b," and "x" but not "z." Under the Board's logic, no matter how significantly that veteran's earning ability were impaired, the Board would be permitted to grant the veteran only a 30% rating and deny referral for extraschedular consideration because, as it found here, the rating criteria "provided for higher ratings for more severe symptoms." Such a finding, however, would leave the veteran entirely uncompensated for symptom "x" with no recourse to extraschedular consideration because symptom "x" is contemplated by a higher schedular rating.

*Id.* at 182. "This example is precisely the situation § 3.321(b)(1) was created to address," *id.*, and is nearly identical to the facts presented here.[3]

---

[2] VA recently promulgated a final rule, effective January 8, 2018, amending § 3.321(b)(1) so that the extraschedular analysis no longer requires consideration of the collective impact of service-connected disabilities. *See* Department of Veterans Affairs, Extra-Schedular Evaluations for Individual Disabilities, 82 Fed. Reg. 57,830 (Dec. 8, 2017). This amendment does not affect our analysis of the matters discussed in this opinion. The Court has not yet determined whether the amendment to § 3.321(b)(1) applies to cases pending before it or whether the amendment did more than eliminate the requirement under *Johnson v. McDonald*, 762 F.3d 1362 (Fed. Cir. 2014) that the Board consider the collective impact of a veteran's disability. We do not address these issues today.

[3] To be clear, the Court does not merely follow *King* blindly. The fundamental issue in *King*, the role of higher schedular ratings in an extraschedular analysis, is also the fundamental premise here. It is true this matter involves successive ratings, but *King*'s principle is universal to the extraschedular analysis. Our dissenting colleague asserts the *King* hypothetical discussed above was merely dicta. *See infra* at 7-8. We agree in the strict sense that it did not describe the precise facts in *King*. But this appeal presents that exact situation. As explained above, we have applied the holding in *King* to the facts present in this case. As such, our holding here today makes the question of

5

The Court disagrees with the Secretary that the appropriate comparison in an extraschedular analysis is between the type of symptoms a veteran suffers and the criteria of the entire DC at issue. *See* Secretary's Brief at 11. Such an interpretation solely contemplates mere symptomatology and eliminates in extraschedular referral analysis the requirement to compare the type of symptoms the appellant suffers from with the criteria of his assigned rating. *See Thun*, 22 Vet.App at 115. The Court also disagrees that applying the proper extraschedular analysis to DC 7913 "eviscerates" caselaw regarding the successive nature of this DC. *See* Secretary's Brief at 11. The Secretary's assertion simply conflates the concepts of schedular and extraschedular disability ratings: it is not logically possible for these distinct rating avenues to overlap to the extent the Secretary suggests. Nothing in today's holding changes how the *schedular* analysis operates. For example, the rating schedule retains its character, including the inapplicability of 38 C.F.R. § 4.7.[4] Thus, because of the successive nature of the rating schedule, there will be some symptoms (as our hypothetical showed) that will not be addressed in a schedular rating. And that remains the case. But that conclusion does not say anything about the role an extraschedular analysis might play in addressing those symptoms. The Secretary acknowledges § 3.321's "gap filling function" but argues that "it is not true that Appellant has shown there is any gap to be filled here." *Id.* But the gap to be filled comes from the unique nature of successive ratings and precisely because the successive schedular rating retains its attributes. Thus, applying *King*'s logic here allows § 3.321(b)(1) to fill that gap. Any failure to consider symptoms not contemplated by a claimant's disability rating is contrary to law and potentially deprives a veteran of compensation.

## IV.

The Court therefore agrees with the appellant that the Board erred as a matter of law in finding that all his diabetic symptoms were contemplated by the assigned 40% disability rating. Because the rating criteria for diabetes are successive, *see Camacho,* 21 Vet.App. 360, the appellant's 40% disability rating solely contemplates his insulin use, his restricted diet, and the regulation of his activities. *See* 38 C.F.R. § 4.119, DC 7913. The appellant requires multiple

---

dicta and *King*'s example academic.

[4] In a traditional schedular analysis, veterans benefit from the availability of § 4.7, which provides for the automatic assignment of a higher schedular rating if a veteran's "disability picture more nearly approximates the criteria required for that [higher] rating" when "there is a question as to which of two evaluations shall be applied." *See also Tatum*, 23 Vet.App. at 156.

daily injections of insulin as well as an insulin pump, diabetic management that is contemplated by a 100% disability rating. R. at 234, *see* C.F.R. § 4.119, DC 7913. The appellant has testified that he has had ketoacidosis and hypoglycemic episodes as well as diabetic complications, and the Board found him both competent and credible to describe "the effects of his current symptoms of his [diabetes] on his daily life." R. at 8. These episodes are potentially relevant to a 60% disability rating. *See id.* The Board failed to explain how a 40% schedular rating adequately compensates the appellant's service-connected disability.

Because the Board found that the appellant's diabetes caused a "considerable loss of working time," the Court may not deem this error harmless. 38 U.S.C. § 7261(b)(2); *see also Yancy v. McDonald,* 27 Vet.App. 484, 494-95 (2016) (holding that if either *Thun* element is not met, then referral for extraschedular is not appropriate). Remand is required for the Board to provide an adequate statement of reasons or bases for its extraschedular consideration. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (finding that Congress mandated, by statute, that the Board provide a written statement of reasons or bases for its conclusion that is adequate to enable the appellant to understand the precise basis for the Board's decision, and to facilitate review in this Court).

The Court will not address the appellant's remaining arguments pertaining to the remanded matter. *See Dunn v. West*, 11 Vet.App. 462, 467 (1998). On remand, the appellant may present, and the Board must consider, any additional evidence and arguments. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment. *See* 38 U.S.C. § 7112; *see also Hayburn's Case*, 2 U.S. (2 Dall.) at 410, n. ("[M]any unfortunate and meritorious [veterans], whom Congress have justly thought proper objects of immediate relief, may suffer great distress, even by a short delay, and may be utterly ruined, by a long one.").

## V.

The Secretary's motion for reconsideration or in the alternative, panel review, is granted, and the June 29, 2016, memorandum decision is WITHDRAWN. For the following reason, that part of the February 11, 2016, Board decision on appeal is VACATED and the matter is REMANDED for readjudication.

TOTH, *Judge*, dissenting: Mr. Petermann has diabetes mellitus. VA's rating schedule has a diagnostic code (DC) for diabetes mellitus. 38 C.F.R. § 4.119, DC 7913 (2017). Mr. Petermann's diabetes manifestations do not differ in type or exceed in severity those listed in DC 7913. The majority holds that the Board erred in denying referral for extraschedular consideration because the specific 40% rating assigned here doesn't contemplate some of these manifestations. *Ante* at 5-6. However, because it's clear from the cumulative language and structure of DC 7913 that each rating contemplates the successive criteria of the whole DC, I respectfully dissent.

VA rules generally provide that, even if a disability does not manifest all the criteria in a specific rating within a given DC, the higher rating will be assigned if a veteran's disability picture more nearly approximates the criteria in that rating than in the lower rating, because real-life disabilities may not be exactly as DCs describe them. *See Tatum v. Shinseki*, 23 Vet.App. 152, 155-57 (2009). These rules, however, don't apply in the case of a cumulative DC such as 7913. *See Middleton v. Shinseki*, 727 F.3d 1172, 1178 (Fed. Cir. 2013). That's because the "enumerated elements" of a rating in DC 7913 "are part of a structured scheme of specific, successive, cumulative criteria for establishing a disability rating" where a higher rating includes the same criteria as a lower rating plus distinct new criteria. *Id.* In other words, DC 7913 is crafted holistically: Each rating must be read with an eye towards the ratings above and below it. So, even if the 40% rating doesn't explicitly *list* a criterion—for example, episodes of ketoacidosis requiring visits to a diabetic care provider—it can't be said that the rating fails to *contemplate* that criterion.

This, it should be noted, is not inconsistent with our holding in *King v. Shulkin*, 29 Vet.App. 174 (2017), that the Board may not deny extraschedular referral simply because a higher schedular rating exists. The hypothetical discussion in *King*, however, remains dicta, *see Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 548 (2013), that isn't persuasive in this context. Thus, with respect, I dissent.