# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-2640

GERRY E. GUDINAS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 22, 2021                          Decided April 16, 2021)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Shondriette D. Kelley*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary A. Flynn*, Chief Counsel; and *Selket N. Cottle*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, GREENBERG, and MEREDITH, *Judges*.

PIETSCH, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

PIETSCH, *Judge*: The appellant, Gerry E. Gudinas, through counsel appeals a December 20, 2018, Board of Veterans' Appeals (Board) decision that denied an effective date earlier than October 26, 2015, for the grant of a 100% rating for service-connected post-traumatic stress disorder (PTSD). Record (R.) at 5-12. The Board remanded the issue of entitlement to service connection for sleep apnea, as secondary to PTSD. *Id*. The remanded issue is not before the Court. *Hampton v. Gober*, 10 Vet.App. 481, 483 (1997). This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). On October 29, 2020, this matter was referred to a panel and oral argument was held on January 22, 2021. For the following reasons, the Court will affirm the Board's decision.

## I. FACTS

The appellant had active service in the U.S. Army from October 1966 to October 1968. R. at 886. In the September 2005 rating decision, the regional office (RO) granted service connection for his PTSD, and evaluated it as 50% disabling, effective March 23, 2005. R. at 747-

52. In the December 2, 2008, rating decision, the RO continued the 50% disability rating for the appellant's PTSD. R. at 649-53. In May 2014, the appellant filed a formal claim for service connection for sleep apnea. R. at 456-59. In the August 2014 rating decision, the RO denied the claim for service connection for sleep apnea, finding that the condition was not incurred in or caused by service, R. at 400-05, and in September 2015,[1] the appellant submitted his NOD with the August 2014 rating decision, R. at 388-89. In an October 2015 letter, the appellant, through his attorney, stated that he was submitting a properly executed VA Form 22a to authorize his current attorney to act as his representative. R. at 349-53. His attorney further noted that the appellant "is currently pursuing a claim for service connection for sleep apnea as secondary to his service[ ]connected PTSD," that he is service connected for PTSD with a 50% rating and tinnitus with a 10% rating, and that he "is now filing a claim for increased compensation based on unemployability [(TDIU)]" due to his service-connected disabilities. R. at 353. Along with the October 2015 letter, the appellant submitted an October 2015 TDIU application (VA Form 21-8940), in which he maintained that his service-connected PTSD and tinnitus prevented him from securing or following any substantially gainful occupation. R. at 346-47. The appellant also submitted his Social Security earnings record, R. at 344, as well as a supplemental claim for a higher rating for PTSD, R. at 340-41.

The appellant was afforded a VA psychiatric examination in December 2015, and based on the examination findings, the examiner diagnosed him with PTSD with associated anxiety, depression, and sleep disturbance. R. at 185, 185-94. The examiner also determined that the appellant's PTSD resulted in occupational and social impairment with reduced reliability and productivity. R. at 186. In a January 2016 rating decision, the RO increased the disability rating for the appellant's PTSD from 50% to 100%, effective October 26, 2015, the date his claim was received. R. at 167-74. The RO also denied entitlement to TDIU. R. at 172.

In an August 2016 Statement of the Case (SOC), the RO acknowledged the October 2015 letter from the appellant's attorney relating that the appellant's sleep apnea is secondary to his service-connected PTSD, but the RO found no medical evidence to substantiate such a positive correlation. R. at 134, 112-34. The RO concluded that "service connection for sleep apnea remains

---

[1] Although the parties refer to this as a September 2014 Notice of Disagreement (NOD), *see* Appellant's Brief (Br.) at 1; Secretary's Br. at 5, the record appears to reflect that VA notified the appellant of the rating decision in September 2014 and that the appellant filed an NOD in September 2015, *see* R. at 389. For consistency, the Court will refer to it as a 2015 NOD.

denied since this condition neither occurred in nor was caused by service." R. at 134. In October 2016, the appellant perfected his appeal of the decision denying service connection for sleep apnea. R. at 98-103.

In November 2016, the appellant submitted an NOD as to the January 2016 rating decision, also seeking entitlement to a total rating effective from May 30, 2014, to October 26, 2015, to include an extraschedular total rating. R. at 77-82. The appellant disagreed with the October 26, 2015, effective date assigned for the 100% schedular rating for his PTSD, R. at 79, and he contended that when assigning the effective date VA had failed to consider and correctly apply 38 C.F.R. § 3.156(b), R. at 80-81. Specifically, he asserted that in May 2014 he had "filed a claim for increased compensation for his service[-]connected disability from [PTSD]," and on October 26, 2015, while his appeal of the August 2014 decision was pending, "VA received new and material evidence in the form of a VA Form 21-8940 and a copy of [the appellant's] Social Security earnings records." R. at 80. He argued that under § 3.156(b), when the RO receives evidence during the pendency of an appeal, the RO must assess whether the evidence constitutes new and material evidence relating to the old claim. *Id.* Because the RO did not do that here, the appellant asserted, the May 30, 2014, claim remains pending and he is entitled to a total schedular rating from that date. R. at 81-82. In an October 2017 SOC, the RO denied entitlement to an effective date of May 30, 2014, for the 100% rating assigned for the service-connected PTSD. R. at 46-69. The appellant perfected his appeal of this issue in December 2017. R. at 33.

In the December 20, 2018, decision on appeal, the Board determined, after a review of the evidence, that an effective date earlier than October 26, 2015, for a 100% rating for service-connected PTSD is not warranted. R. at 5-8. Initially, the Board noted that the appellant filed an application for TDIU on October 26, 2015, that VA considered his supplemental claim for increased compensation for PTSD filed as of the same date (even though it was received on November 2, 2015), and that the RO awarded a 100% PTSD rating from October 26, 2015, the date VA received his claim.[2] R. at 7. The Board then acknowledged the appellant's assertion that he is entitled to an effective date of May 30, 2014, based on the submission of the VA Form 21-8940 and Social Security earnings record, which according to the appellant, triggered § 3.156(b).

---

[2] The Board also noted that pursuant to 38 C.F.R. § 3.400, the effective date in this case should be December 12, 2015, the date entitlement arose, but the Board declined to disturb the RO's more favorable finding. R. at 8.

3

*Id.* But, according to the Board, the May 30, 2014, claim was a claim for service connection for sleep apnea, because the claim did not mention a psychiatric disability, including PTSD. *Id*. The Board determined that the May 2014 claim "contained no mention of or indication that the [appellant] intended to file a claim for an increase in the PTSD rating." *Id*. According to the Board, in the May 2014 application "there was no intent to file for an increased [rating] for his service-connected PTSD." *Id*. The Board determined that October 26, 2015, was the correct date of the appellant's claim for an increased rating for PTSD and denied an effective date earlier than the date of the claim. *Id.* at 7-8. This appeal followed.

## II. THE PARTIES' ARGUMENTS

The main premise of the appellant's appeal is that once service connection has been established for a disability, "any claim for additional service[-]connected compensation in the form of an increased schedular rating, increased rating based on unemployability, or . . . secondary service[-]connected compensation, is part and parcel of the same claim stream." Appellant's Br. at 4. In making this argument, the appellant maintains that regardless of whether the claim is framed or presented as a claim for increased schedular rating, increased rating based on unemployability, or secondary service-connected compensation, "the purpose of all these claims is to increase the amount of compensation payable for the veteran's service[-]connected injury." *Id*.

In this case, the appellant contends that VA received new evidence after he appealed VA's denial of his May 2014 claim for service connection for sleep apnea, which triggered consideration of 38 C.F.R. § 3.156(b).[3] *Id*. at 6-7. In making this argument, the appellant is careful to describe his claim for service connection for sleep apnea as one of "additional service[-]connected compensation based on an additional disability proximately due to or the result of his service[-]connected disability from [PTSD]." *Id*. In characterizing his May 2014 claim this way,

---

[3] As a result of the passage of the Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA), VA no longer reopens claims based on "new and material evidence." Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). That language is derived from the pre-Act version of the applicable regulation. *See* 38 C.F.R. § 3.156(a) (2019); 38 C.F.R. § 3.2400 (2019) (explaining that claims filed before the effective date of the Act are "legacy appeals" to be analyzed under VA's traditional process, and claims filed after that date are to be adjudicated under a modernized appeal system); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (stating the effective date of the Act is February 19, 2019). Instead of filing claims to reopen based on "new and material evidence," under VAIMA, claimants can file supplemental claims based on "new and relevant evidence." 38 U.S.C. § 5108(a) (effective Feb. 19, 2019). The appellant's claim was adjudicated under the legacy appeals system and there is no assertion that he elected into the modernized review system. Thus, the "new and material evidence" standard may still be applied in this matter.

the appellant alleges that any evidence tending to support an award of "additional compensation" is relevant to and supportive of this claim. *Id*. In other words, the appellant asserts that because the May 2014 claim seeks secondary service connection for sleep apnea as a result of his service-connected PTSD, he is thus seeking additional service-connected compensation due to PTSD, thereby raising the issue of a higher rating for his PTSD. *Id*. at 4-7. Focusing on 38 C.F.R. § 3.155(d)(2), the appellant contends that "[a] claim for secondary service connection is an ancillary claim for additional service[-]connected compensation in the same way that entitlement to special monthly compensation under 38 C.F.R. § 3.350 is an ancillary benefit." *Id*. at 8.

According to the appellant, because the May 2014 claim raised the issue of entitlement to a higher rating for PTSD, then pursuant to § 3.156(b), this claim remained pending because on October 26, 2015, he submitted additional evidence, in the form of the VA Form 21-8940 TDIU application and the Social Security earnings record, both of which were new and material evidence with regard to his increased-rating claim. *Id*. at 7-9. In this regard, he asserts that the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit's) decisions in *Bond v. Shinseki*, 659 F.3d 1362 (Fed. Cir. 2011), and *Beraud v. McDonald*, 766 F.3d 1402 (Fed. Cir. 2014), require VA to "'assess any evidence submitted during the relevant period and make a determination as to whether it constitutes new and material evidence relating to the old claim.'" *Id.* at 9 (quoting *Bond*, 659 F.3d at 1367 (emphasis omitted)). The appellant argues that the Board failed to make that assessment here because it too narrowly construed the May 2014 claim. *Id*.

The appellant also attempts to expand the Court's holding in *Rice v. Shinseki*, 22 Vet.App. 447 (2009) (per curiam), in arguing that the October 2015 submissions were "part and parcel" of his underlying May 2014 claim for "additional service[-]connected compensation for his disability from [PTSD], as his disability from sleep apnea was secondary to his current disability from [PTSD]." *Id*. at 4, 10. The appellant maintains that a claim for secondary service connection "is comparable to a claim for increased compensation because, if granted, an award of secondary service connection results in additional service[-]connected compensation." *Id*. at 10. The appellant also references *Harper v. Wilkie*, 30 Vet.App. 356, 362 (2018), noting that he, like the claimant in *Harper*, also has not been awarded the highest rating possible, including TDIU, for the entire appeal period. *Id*. at 11.

The Secretary finds the appellant's arguments unavailing and unpersuasive. Secretary's Br. at 3-10. First, the Secretary maintains that the record demonstrates that the May 2014 sleep apnea

claim is silent as to any psychiatric disability, to include PTSD, and the August 2014 rating decision and the September 2015 NOD are also absent any discussion of PTSD. *Id*. at 5. According to the Secretary, the appellant first asserted that his sleep apnea is secondary to his PTSD on October 26, 2015, when he submitted the statement in support of his claim, along with the VA Form 21-8940 and the Social Security earnings record. *Id*. The Secretary also contends that the Board considered the appellant's contentions and correctly found that the May 2014 "'claim contained no mention of or indication that the [appellant] intended to file a claim for an increase in the PTSD rating[, and a]s such, there was no intent to file for an increase for his service-connected PTSD.'" *Id*. at 6 (quoting R. at 7). With respect to the appellant's assertion that his May 2014 claim for sleep apnea "was a claim for 'ancillary benefits' under 38 C.F.R. § 3.155(d)," *id.* (quoting Appellant's Br. at 8), the Secretary responds that there was nothing in the May 2014 claim or September 2015 NOD "potentially relating his sleep apnea to his PTSD or suggesting that [the a]ppellant was seeking an increased rating for his service-connected PTSD." *Id*. The Secretary also states that though "VA accepted informal claims at the time of [the] May 2014 filing[,] . . . for a document to meet the threshold requirement to be considered a claim, it must, at a minimum, contain an expression of an intent to apply for benefits and identify the benefits sought." *Id*. at 7. The Secretary asserts that "[e]ven a sympathetic reading of [the a]ppellant's May 2014 claim wholly fails to establish that he intended to seek benefits for sleep apnea as secondary to his PTSD or an increased rating for his service-connected PTSD." *Id*.

As for the appellant's reliance on the Federal Circuit's decisions in *Bond* and *Beraud*, and his attempts to expand this Court's rulings in *Rice* and *Harper*, the Secretary asserts that the appellant has not established that these cases apply here. *Id*. at 8-9. According to the Secretary, *Bond* and *Beraud* "involved a single disability," but here we are dealing with two separate disabilities, *id.* at 8, and the "May 2014 claim for service connection for sleep apnea neither rendered the issue part and parcel of, nor otherwise related it to, his service-connected PTSD," *id*. at 9. In addition, it was not until the October 2015 letter and submissions were filed that there was any connection between the appellant's sleep apnea and PTSD, as well as any indication that the appellant was seeking a higher rating for his PTSD. *Id*. The Secretary asserts that the "[a]ppellant would have the Court treat his May 2014 claim for service connection for sleep apnea as a claim for an increased rating for his service-connected PTSD, without any evidence, prior to October 2015, that the claims were related." *Id*. at 9-10.

6

In his reply brief, the appellant asserts that the Secretary, like the Board, fails to acknowledge VA's duty to maximize benefits and too narrowly construes his claim. Reply Br. at 2-4. He again contends that his May 2014 and October 2015 claims both sought increased service-connected compensation—in 2014, based on a secondary disability, and in 2015, based on three theories: an increased rating for PTSD, secondary compensation for sleep apnea, and TDIU—and he avers that "[t]hese are all part and parcel of a claim for increased compensation." *Id.* at 4 (citing *Rice*, 22 Vet.App. at 453). He also maintains that the Court's decision in *Morgan v. Wilkie*, 31 Vet.App. 162 (2019), supports his contention that the May 2014 service connection claim for sleep apnea "was a claim for a higher schedular rating for his service[-]connected disabilities[,] to include as was done in 2015, a secondary claim due to his service[-]connected PTSD." *Id.* at 5-6.

On January 12, 2021, the Secretary filed an unopposed motion for leave to file a supplemental record of proceedings and explained that the "motion is being filed because there are additional records before the Secretary and the Board . . . that are relevant to the issues decided by the Board or . . . otherwise raised in the appeal." Motion at 1. In addition to submitting the supplemental record of proceedings, pursuant to Rule 30(b), the Secretary also submitted a notice of additional authority; specifically, the case of *Ross v. Peake*, 21 Vet.App. 528 (2008), *aff'd sub nom. Ross v. Shinseki*, 309 F. App'x 394 (Fed. Cir. 2009), as significant authority "which provides additional guidance on what constitutes a claim for increased compensation." Jan. 12, 2021, Letter from the Secretary.

### III. ANALYSIS

#### A. Law

At the time of the initial decision in this case, 38 U.S.C. § 5110, which governs the assignment of an effective date for an award of benefits, provided:

> [T]he effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a) (2014). The implementing regulation similarly provided that the effective date generally "will be the date of receipt of the claim or the date entitlement arose, whichever is later."

38 C.F.R. § 3.400 (2014).[4] VA regulations further specified that, when new and material evidence is received within an appeal period or prior to an appellate decision, "[t]he effective date will be as though the former decision had not been rendered." 38 C.F.R. § 3.400(q). At issue here is a related provision, which was applicable to pending claims and provided as follows: "New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed, . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period." 38 C.F.R. § 3.156(b) (effective to February 19, 2019).

A Board determination as to the proper effective date is a finding of fact that will not be overturned unless the Court finds the determination clearly erroneous. *Evans v. West*, 12 Vet.App. 396, 401 (1999). A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

### B. Scope of May 2014 Claim

Before the Court addresses whether the Board erred by failing to assess the evidence submitted in October 2015 and whether that evidence constitutes new and material evidence received under § 3.156(b), the Court must consider the appellant's contention that the Board too narrowly construed the scope of his May 2014 claim. As mentioned above, the appellant's arguments center on whether a claim for secondary service connection constitutes a claim for

---

[4] Effective February 19, 2019, Congress amended portions of section 5110 and VA amended portions of 38 C.F.R. § 3.400 to comply with the appeals processing changes mandated by the VAIMA. *See* Pub. L. No. 115-55, § 2(x), 131 Stat. at 1115 (providing the effective date of statutory amendments); VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 170 (Jan. 18, 2019) (final rule); *see also* 84 Fed. Reg. at 2449 (notification of effective date for regulatory amendments). However, the regulatory changes apply only to claims in which an initial decision is issued after February 19, 2019, unless a "legacy" claimant elects to use the modernized review system. 84 Fed. Reg. at 177. There is no assertion that the new statute or rule should apply here; thus, the Court's analysis is confined to the law in effect at the time of the RO's initial decision.

increased compensation relating to the already service-connected primary condition and whether the secondary claim therefore is part and parcel of the same claim.[5]

### 1. Ross, Manzanares, and Rice

To begin, the Court assumes, without deciding, that the appellant's May 2014 claim for sleep apnea encompassed the alternative theory of service connection—that his sleep apnea was due to his service-connected PTSD. However, the Court cannot accept the appellant's contention that such a claim is comparable to a claim for increased compensation because we are bound by this Court's decision in *Ross*, which made clear that a claim for secondary service connection is not the equivalent of a claim for increased compensation.

In *Ross*, the claimant appealed the disability rating assigned in a May 1999 rating decision that had awarded service connection for a heart condition and assigned a 10% disability rating effective February 1989. 21 Vet.App. at 529-30. On December 7, 1999, during the pendency of that appeal, the appellant submitted additional evidence, which the RO considered to be a claim for secondary service connection for depression. *Id.* During an administrative appeal, the RO awarded service connection for depression and anxiety, secondary to the appellant's service-connected heart condition, and assigned a 70% rating for this disorder, effective from December 7, 1999, the date it determined that the appellant claimed secondary service connection. *Id.* at 530.

On appeal to the Court, Mr. Ross raised two arguments for an earlier effective date: (1) The effective date assigned an award of secondary service connection must be the same as the award for the underlying condition because 38 C.F.R. § 3.310(a) states that the "'secondary condition shall be considered a part of the original condition,'" *id.* at 531 (quoting 38 C.F.R. § 3.310(a)); and (2) "a claim for secondary service connection is a claim for increased compensation," and, therefore, the Board erred when it failed to consider the effective-date statute and regulation that pertain to awards of increased compensation, *id.*

Mr. Ross's second argument resembles the argument the appellant raises here on appeal— that the appellant's claim for secondary service connection, which he characterizes as a claim for "additional service[-]connected compensation," is "comparable to a claim for increased compensation because, if granted, an award of secondary service connection results in additional

---

[5] In this regard, the Court emphasizes that the appellant does not dispute the Board's factual finding that his May 2014 claim does not mention a psychiatric disability or reflect an intent to file for an increased disability rating for PTSD. Accordingly, we consider only, as argued, whether the Board legally erred by failing to construe his alleged claim for sleep apnea as secondary to PTSD as a claim for increased compensation for PTSD.

service[-]connected compensation." Appellant's Br. at 10. The Court rejected the claimant's argument in *Ross*, and held that "a claim for increased compensation is one where a veteran asserts that an already service-connected condition has worsened[,] and not where . . . a veteran asserts that he or she has incurred *additional* disabilities as a result of that service-connected condition." 21 Vet.App. at 532. The Court further held that while "§ 3.310(a) provides that the 'secondary condition shall be considered a part of the original condition,' when secondary service connection is thus established, . . . § 3.310(a) does not control the assignment of an effective date for that award of secondary service connection." *Id*. (citing *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007)). The Court noted that "§ 3.310(a) requires direct and secondarily service-connected conditions to be afforded the same treatment for *all* purposes." *Id*. (citing *Roper*, 20 Vet.App. at 181). Thus, the Court found that "an award of 'increased compensation' within the meaning of [the applicable effective-date statute] does not encompass an award of secondary service connection because, by definition, secondary service connection requires the incurrence of an *additional* disability." *Id.* (quoting 38 U.S.C. § 5110(b)(2) (2008)).

Although the Court reached its holding in *Ross* in the context of determining entitlement to an effective date under section 5110(b)(2), the Federal Circuit reached the same result when it considered similar contentions under §§ 3.310(a) and 3.156(b). *See Manzanares v. Shulkin*, 863 F.3d 1374 (Fed. Cir. 2017). In that case, the claimant filed a claim for an increased rating for her service-connected bilateral ankle disorder in February 2006, and in August 2006, VA assigned a 10% rating for each ankle as well as an effective date of February 22, 2006. *Id*. at 1375. In April 2007, the claimant submitted her disagreement with the assigned disability rating, also filing a claim for service connection for a lumbar spine disability as secondary to the service-connected bilateral ankle disorder. *Id*. In a March 2008 rating decision, VA granted secondary service connection for the lumbar spine disorder, evaluated it as 20% disabling, and assigned an effective date of April 27, 2007, the date the claimant had filed her secondary-service-connection claim. *Id*. The claimant appealed this decision to the Board and argued that she was entitled to an earlier effective date of February 22, 2006, for the grant of secondary service connection for her back disorder. *Id*. The claimant also argued that when considering § 3.156(b), "the secondary service connection claim should be treated as new and material evidence within the meaning of this regulation making the secondary service connection claim part of the ankle claim." *Id*. The Board

denied an earlier effective date for the service-connected low back disorder, and the claimant appealed this decision to the Court, which affirmed the Board decision. *Id.*

On appeal before the Federal Circuit, the claimant argued that "her April 2007 claim for secondary service connection for her back condition was 'part' of her pending ankle claim by virtue of § 3.310(a)" and that "§ 3.156(b) required that . . . VA treat the 'new and material evidence'— *i.e.*, her back claim—'as having been filed' on February 22, 2006, the date of her ankle claim." *Id.* at 1376. In the alternative, the claimant argued "that § 3.310(a) treats her back claim as part of her ankle claim for purposes of 38 C.F.R. § 3.400(o)(2)," VA's regulation pertaining to effective dates for claims for increased compensation. *Id.* at 1376-77.

The Federal Circuit observed that similar arguments had already been raised by the claimant in *Ross* and that this Court rejected these arguments, concluding that "§ 3.310(a) does not control effective dates for secondary conditions and, because a secondary condition is a separate, additional disability, such a claim cannot be the same as a claim for increased rating, due to the worsening of the underlying primary condition, for instance." *Id.* at 1377 (citing *Ross*, 21 Vet.App. at 532-33). Relying on its decision in *Ellington v. Peake*, 541 F.3d 1364 (Fed. Cir. 2008), the Federal Circuit then held that the language in § 3.310(a) "speaks in terms of *conditions*, not *claims*" and "[b]y its plain terms . . . does not mean that a *claim* for secondary service connection is treated as part of the primary claim for service connection (or a claim for increased rating for the primary condition)." *Id.* at 1377-78; *see id.* at 1378 (noting that nothing in the definition of "claim," as provided in 38 C.F.R. § 20.3(f) (2017), "suggests that it includes secondary conditions"); *see also Ellington*, 541 F.3d at 1369-71 (affirming that primary and secondary service connection claims are distinct for effective-date purposes).

Further, like the appellant, the claimant in *Manzanares* also argued that pursuant to 38 C.F.R. § 3.155(d)(2), her back claim should be treated as an "'ancillary benefit'" to her ankle disorder. *Id.* at 1378; *see* Appellant's Br. at 8. This regulation provided:

> Once VA receives a complete claim, VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of the adjudication decision (e.g., entitlement to 38 U.S.C. Chapter 35 Dependents' Educational Assistance benefits, entitlement to special monthly compensation under 38 C[.]F[.]R[. §] 3.350, entitlement to adaptive automobile allowance, etc.). The claimant may, but need not, assert entitlement to ancillary benefits at the time the complete claim is filed.

38 C.F.R. § 3.155(d)(2) (effective Mar. 24, 2015). In response to this argument, the Federal Circuit held that "[a] claim for secondary service connection is not an 'ancillary benefit' within the meaning of that regulation; all of the ancillary benefits referred to in § 3.155(d)(2) stem from the specific condition that is the subject of the claim, not some other unidentified condition." *Manzanares*, 863 F.3d at 1378. In addition, the Federal Circuit determined that nothing in the history of § 3.310(a), to include its relationship to § 3.156(b), suggests that a claim for "secondary service connection is part of a claim for primary service connection or one for increased rating for a primary condition." *Id*. The Federal Circuit further explained that, although § 3.310(a) provides that a disability that is secondary to a service-connected condition "'shall be considered a part of the original condition,'" this "cannot mean that primary claims for service connection or subsequent claims for increased ratings for primary conditions necessarily encompass later claims for secondary service connection." *Id*. at 1379 (quoting 38 C.F.R. § 3.310(a)).

Notwithstanding the similarity among the arguments raised by the appellant here and the arguments and issues addressed in *Ross* and *Manzanares*, the appellant did not cite either case in his briefs. Further, when questioned at oral argument, the appellant maintained that neither case controls the outcome here because in those cases the secondary condition was not part of the same claim stream as the primary condition. Oral Argument (O.A.) at 11:05-12:52, 15:47-16:27, *Gudinas v. Wilkie*, U.S. Vet. App. No. 19-2640 (oral argument held Jan. 22, 2021), https://www.uscourts.cavc.gov/oral_arguments_audio.php. Indeed, he argued that in those cases the claim for secondary service connection was made independent of any other action, and the rating for the primary condition was not in play and had become final. *Id.* at 13:10-15:09. But here, he asserted that a separate action in October 2015 took place as "part and parcel" of the pending claim for secondary service connection. *Id.* He maintained that the secondary condition is part and parcel of a claim for increase because, if successful, he would receive additional compensation, and on this basis, he asked the Court to expand its holding in *Rice*. *Id.*; *see id.* at 18:33-:57, 24:00-:30.

The Court is not persuaded that there is any meaningful difference between the facts here and those in *Ross* and *Manzanares* that would alter the legal conclusion that a claim for secondary service connection is *not* a claim for increased compensation, and that claims for the primary and secondary condition are not part and parcel of the same claim. First, contrary to the appellant's contention, the foregoing discussion of *Ross* and *Manzanares* illustrates that in each case the claim

12

for secondary service connection was raised during the claimant's appeal of the disability rating assigned for the primary condition, i.e., within one of the periods mentioned in § 3.156(b). *See Manzanares*, 863 F.3d at 1375; *Ross*, 21 Vet.App. at 530. Next, although the order in which the claims were raised here is reversed, in that the appellant maintains that he first filed his secondary claim in May 2014 and, during the pendency of his appeal of the denial, requested an increase for the primary condition in October 2015, the nature of the claims remains the same: the secondary claim is seeking benefits for an *additional* disability, whereas the claim for an increased rating for the primary condition is seeking benefits for the *worsening* of an already service-connected disability. *See Ross*, 21 Vet.App. at 532.

Nor does the Court find availing the appellant's contention that his proffered interpretation is a logical extension of *Rice*. In *Rice*, the Court determined that "a request for TDIU . . . is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or . . . as part of a claim for increased compensation." 22 Vet.App. at 453-54. Although the appellant argues that a secondary service connection claim is comparable to a claim for increased compensation because an award will result in an overall increase in service-connected compensation, the Court in *Ross* explained that "being secondarily service connected is not analogous to being rendered unemployable as a result of a service-connected disability because the latter demonstrates a worsening of the *underlying* condition and not the incurrence of an *additional* disability." 21 Vet.App. at 532; *see id.* at 533 ("[A]lthough an award of secondary service connection may result in an increase in the overall total disability compensation, it is a separate factor and such award does not represent an increase in the severity of the original disability."); *see also Dalton v. Nicholson*, 21 Vet.App. 23, 32-33 (2007) (holding that an award of TDIU based on an already service-connected disability amounts to an award of increased compensation within the meaning of section 5110(b)(2)); *Wood v. Derwinski*, 1 Vet.App. 367, 369 (1991) (holding that an application for unemployability compensation "was an application for 'increased compensation'" because the claimant "was not alleging any new disability," but was attempting to show that his already service-connected condition "was more incapacitating than the level at which it was then evaluated"). Thus, contrary to the appellant's argument, the Court in *Ross* essentially already rejected his attempt to extend *Rice*.

13

In further support of his claim, the appellant argues that the Court is bound by the Federal Circuit's decisions in *Bond* and *Beraud*. O.A. at 12:00-:05; Appellant's Br. at 9. He notes that in *Bond* the Federal Circuit held that § 3.156(b) "requires VA to 'assess any evidence submitted during the relevant period and make a determination as to whether it constitutes new and material evidence relating to the old claim.'" Appellant's Br. at 9 (quoting *Bond*, 659 F.3d at 1367 (emphasis omitted)). The appellant also notes that in *Beraud* the Federal Circuit found *Bond* to be the controlling law on VA's duty to make a § 3.156(b) determination. *Id.* (citing *Beraud*, 766 F.3d at 1407).

Applying *Bond* and *Beraud* to the facts of this case, the appellant contends that the Board never determined whether his October 2015 submissions—the VA Form 21-8940 and Social Security earnings statement—constituted new and material evidence as required under § 3.156(b), and thus, his May 2014 claim, which he characterizes as a claim "for additional service[-]connected compensation for his disability from [PTSD], asserting that his disability from sleep apnea was secondary to his current disability from [PTSD], remains pending." *Id.* at 9-10. In response, the Secretary notes that in *Bond*, "the issue involved a single disability," and in this case the appellant "is attempting to expand that analysis to merge two separate disabilities and claim streams[—]for[] PTSD, which is service connected, and sleep apnea, which [is not]." Secretary's Br. at 8.

The Court agrees that *Bond* and *Beraud* are not controlling under the circumstances of this case. Both *Bond* and *Beraud* confirm that under § 3.156(b), if an appellant submits new and material evidence within the 1-year appeal period following an RO decision, VA has an obligation to assess that evidence as if it were submitted as part of the *underlying original claim*. *Bond*, 659 F.3d at 1367-69. And if VA does not do so, the claim remains pending. *Beraud*, 766 F.3d at 1407. However, a review of the facts in both cases demonstrates why neither opinion applies here.

In *Bond*, the claimant submitted a request for increase for service-connected PTSD within 1 year of VA's award of an initial disability rating for PTSD. 659 F.3d at 1363. Along with this request, he submitted a medical record pertaining to his psychological condition. *Id*. Although the RO treated the submissions as a new claim, the Federal Circuit remanded the case for VA to consider whether the submissions constituted new and material evidence relating to his original

14

claim, regardless of whether the submissions might otherwise support a new claim. 659 F.3d at 1367-68.

In *Beraud*, the claimant initially sought benefits for a headache condition in 1985; VA denied service connection for this disability before he could respond to VA's request for additional information. 766 F.3d at 1403. The claimant did not appeal the rating decision, but within the 1-year appeal period, he responded to VA's request for information. *Id.* The RO did not take additional action. *Id.* Four years later, he sought to reopen the claim; the RO denied reopening without referring to his prior submission. *Id.* Following two more unsuccessful attempts to reopen his claim, the claimant filed another claim for headaches and was granted service connection, effective from the date of his latest claim to reopen. *Id.* at 1404. On appeal, the Federal Circuit held that the intervening final decisions did not terminate the pendency of the 1985 claim, concluding that pursuant to § 3.156(b), "VA was under an express regulatory obligation to make a determination regarding the character of the new evidence" submitted within 1 year of the 1985 decision. *Id.* at 1406-07. Similar to *Bond*, where the additional psychological evidence related to the claimant's initial PTSD claim, the facts in *Beraud* dealt only with the submission of additional evidence involving a single disability—a headache disorder. *Id.* at 1403.

Moreover, the Federal Circuit in *Manzanares* addressed the potential applicability of *Bond* and *Beraud* to claims for secondary service connection and concluded that neither applied. *See Manzanares*, 863 F.3d at 1379. In making this determination, the Federal Circuit described its holding in *Bond*: "[A] claim for increased rating must be treated as potentially 'new and material' evidence in support [of] a pending claim for the *same condition*, if that evidence satisfied the new and material evidence criteria." *Id.* (emphasis added) (citing *Bond*, 659 F.3d at 1367). The Federal Circuit further noted that "*Beraud* similarly held that it was error for the VA not to consider whether evidence submitted during the appeal period was new and material." *Id.* (internal quotation marks omitted) (citing *Beraud*, 766 F.3d at 1407). Notably, what the Federal Circuit found dispositive in *Manzanares* was that "[n]either [*Bond* nor *Beraud*] dealt with secondary service connection, much less suggested that secondary service connection is part of a primary benefits claim." *Id.* Hence, although Ms. Manzanares raised her request for secondary service connection during the pendency of her appeal of the rating for the primary condition, the Federal Circuit concluded that § 3.156(b) did not apply; the effective date for the secondary condition was properly based on the date of receipt of the secondary claim. *Id.*

### 3. Application

Here, the Court concludes that the foregoing discussion of *Manzanares*, *Beraud*, *Bond*, *Ross*, and *Rice* leads to only one conclusion: The Board did not err in the 2018 decision on appeal by failing to assess, under § 3.156(b), whether the appellant's October 2015 submissions were new and material evidence relating to the May 2014 claim. As stated above, and not disputed by the appellant, the appellant's May 2014 and October 2015 submissions relate to two conditions—in 2014, he sought service connection for sleep apnea and, in 2015, he requested an increased rating for PTSD and TDIU, which he related to his PTSD and service-connected tinnitus. Considering the holdings in *Manzanares* and *Ross*, it is immaterial whether the 2014 claim expressly requested benefits for sleep apnea as secondary to PTSD or whether the appellant's subsequent clarification regarding the theory of this claim relates back to May 2014. The law is clear that claims for secondary service connection are not claims for increased compensation and are not part and parcel of a claim for increased compensation for the primary condition.

Thus, although the Board did not address whether the October 2015 submissions were new and material evidence related to the May 2014 claim, a review of the Board's analysis reflects that the Board essentially considered whether § 3.156(b) was triggered when it determined the nature of the May 2014 claim. *See* R. at 7. In this regard, the Board concluded that "the claim filed on May 30, 2014[,] was a claim for service connection for sleep apnea" and did not "mention a psychiatric disability, to include PTSD." *Id.* But, even assuming the appellant's October 2015 express request for secondary service connection for sleep apnea relates back to the May 30, 2014, filing, which, on its face, pertained only to direct service connection, the appellant has not shown that any Board error in this regard was prejudicial. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). In other words, the appellant has not shown that the October 2015 submissions, which related to an increased rating for PTSD, must have been assessed under § 3.156(b) to determine whether they were new and material evidence related to his purportedly pending claim for sleep apnea secondary to PTSD.

Finally, the Court's conclusion here does not run afoul of VA's duty to maximize benefits, nor does our decision in *Morgan*, 31 Vet.App. at 162, compel a different result. In this regard, the Court does not agree with the appellant's contention that *Morgan*'s discussion of VA's duty to

maximize benefits, including consideration of secondary service connection when evaluating a disability, pertains to the meaning and the scope of his May 2014 claim. Reply Br. at 4; *see Morgan*, 31 Vet.App. at 164. Rather, *Morgan* "support[s] the notion that VA is obligated to develop and adjudicate claims for secondary service connection that are reasonably raised during the processing of a properly initiated claim as to the primary service-connected disability's *evaluation level*." *Bailey v. Wilkie*, 33 Vet.App. 188, 201 (2021) (emphasis added). But we are not concerned with whether VA had a duty to develop a secondary service connection claim for sleep apnea when evaluating the severity of the appellant's PTSD. Instead, the appellant expressly raised a claim for sleep apnea in May 2014 and a claim for an increased rating for PTSD in October 2015; thus, the Federal Circuit's decision in *Manzanares*, which addressed the relationship between claims for primary and secondary conditions and the potential applicability of § 3.156(b) controls. *Morgan* did not purport to overrule our caselaw regarding the nature of secondary service connection claims, nor could it.

Pursuant to *Manzanares* and *Ross*, a claim for secondary service connection is not part of every claim for service connection for the primary disability or for an increase in the primary disability, nor is it a claim for increased compensation. *See Manzanares*, 863 F.3d at 1379 (concluding that a claim for secondary service connection was not part of a pending claim for an increased rating of the primary condition and thus was not entitled to the same effective date as the primary condition); *Ross*, 21 Vet.App. at 532 (holding that an award of secondary service connection is not an award of increased compensation because it requires the incurrence of an additional disability). Accordingly, because the appellant makes no other arguments challenging the Board's denial of an earlier effective date for his 100% schedular rating for PTSD, and the Court concludes that his arguments for remand based on § 3.156(b) are unavailing, the Court will affirm the Board's decision.

## IV. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, oral argument, and a review of the record, the Board's December 20, 2018, decision is AFFIRMED.


GREENBERG, Judge *dissenting*: I agree with the frequently expressed sentiments of the late Justices Ruth Bader Ginsburg and William J. Brennan Jr. in the matter of dissents:

17

Dissents speak to a future age. It's not simply to say, "My colleagues are wrong and I would do it this way." But the greatest dissents do become court opinions and gradually over time their views become the dominant view. So that's the dissenter's hope: that they are writing not for today, but for tomorrow.[6]

Dissent for its own sake has no value . . . . However, where significant and deeply held disagreement exists, members of the Court have a responsibility to articulate it. . . . Unanimity is not in and of itself a judicial virtue. . . . Judges have no power to *declare* law. Courts *derive* legal principles and have a duty to explain *why* and *how* a given rule has come to be. . . . [Judges] are forced by a dissent to reconsider the fundamental questions and rethink the result . . . . In my judgment . . . the unique interpretive role of [our Court] with respect to the Constitution [and our authority] demands some flexibility with respect to the call of stare decisis. . . . [We should not be] captive to the anachronistic view of long-gone generations. . . . The right to dissent is one of the great and cherished freedoms by reasons of the excellent accident of our American births.

*See* William J. Brennan, Jr.,[7] *In Defense of Dissents*, 37 HASTINGS L.J. 427, 427-35 (1985) (emphasis in original); *see also Bly v. McDonald*, 28 Vet.App. 256, 265-66 (Greenberg, J., dissenting), *vacated and remanded sub nom. Bly v. Shulkin*, 883 F.3d 1374 (Fed. Cir. 2018); *Ollis v. McDonald*, 27 Vet.App. 405, 414-15 (Greenberg, J., dissenting), *aff'd in part, vacated in part, and remanded sub nom. Ollis v. Shulkin*, 857 F.3d 1338 (Fed. Cir. 2017); *James v. Shulkin*, 29 Vet.App. 127, 130-31 (2017) (Greenberg, J., dissenting), *vacated and remanded sub nom. James v. Wilkie*, 917 F.3d 1368 (Fed. Cir. 2019)(citing *Henderson* when noting the need for flexibility in applying rules in the uniquely pro-claimant arena of veterans benefits law); *Taylor v. Wilkie*, 31 Vet.App. 147, 155-62 (Greenberg, J., dissenting).

It is undisputed that Congress intended to create the veterans benefits system as a pro-claimant, non-adversarial system. *See Shinseki v. Sanders*, 556 U.S. 396, 416, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (Souter, J., dissenting) (noting "Congress's understandable decision to place a

---

[6] Interview with Ruth Bader Ginsburg, *Ruth Bader Ginsburg and Malvina Harland*, Morning Edition (May 2, 2002, 12:00 AM), https://www.npr.org/templates/story/story.php?storyId=1142685 (timestamp 3:47-4:05).

[7] Justice William J. Brennan, Jr., practiced law in New Jersey, served in the United States Army during World War II, served on the Superior Court of New Jersey from 1949 to 1951, and served on the Supreme Court of New Jersey until 1956, when he was nominated as a recess appointment by President Eisenhower. Justice Brennan also expressed his strongly held view of veterans as a unique class of litigants, while adhering to customary notions of constitutional and statutory construction. *See Johnson v. Robison*, 415 U.S. 361 (1974). Long before our Court was created by Congress in 1988, Justice Brennan recognized that there was no bar to consideration of a veteran's constitutional claim. *Id.* at 367.

thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions"). As Justice Alito has recognized, "we have long applied 'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Henderson v. Shinseki*, 562 U.S. 428, 441 (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220-21 n.9, 112 S.Ct. 570, 116 L. Ed. 2d 578 (1991)); *see United States v. Oregon*, 366 U.S. 643, 647, 81 S. Ct. 1278,6 L.Ed. 2d 575 (1961) ("The solicitude of Congress for veterans is of long standing.")

After all, Congress codified the Secretary's duty to assist, within reason. *See* 38 U.S.C. § 5103A(a)(1). Related to that duty to assist is that "[t]he Secretary is required to maximize benefits." *Bradley v. Peake*, 22 Vet.App. 280, 294 (2008). Veterans are "generally . . . presumed to be seeking the maximum benefit allowed by law and regulation." *AB v. Brown*, 6 Vet.App. 35, 38 (1993); *see also Tatum v. Shinseki*, 23 Vet.App. 152, 157 (2009). This duty to maximize benefits stems from 38 C.F.R. § 3.103(a), which requires VA to "render a decision which grants *every benefit* that can be supported in law while protecting the interests of the Government." (emphasis added). This includes

> examining all possible rating methods in search of the highest level of established schedular compensation . . . including, but not limited to, secondary service connection, analogous ratings, the requirement to assign a higher schedular rating if a veteran's disability more nearly approximates the higher rating, the requirement that VA resolve doubt in favor of claimants, ratings based on individual unemployability, special monthly compensation, and the ability to rate a single disability under multiple diagnostic codes without pyramiding— are critical components of the duty to maximize benefits well before we reach an extraschedular analysis.

*Morgan v. Wilkie*, 31 Vet.App. 162, 164 (2019) (citing *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) ("VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations.")). With this philosophy in mind, I respectfully dissent.

Vietnam War veteran Gerry E. Gudinas served on active duty in the U.S. Army from October 1966 to October 1968 as an indirect fire crewman, including deployment to the Republic of Vietnam. R. at 886 (DD Form 214). The appellant earned many medals for his meritorious service including the Combat Infantryman Badge, Air Medal, and Soldiers Medal, which was awarded for recognizing an act of "heroism." *Id*, R. at 748.

In September 2005, the regional office granted the appellant service connection for PTSD with a 50% disability rating effective March 23, 2005. R. at 747-52. The RO decision notes "poor sleep" as a symptom of the appellant's PTSD and a reason for granting him a 50% disability rating. R. at 748.

In May 2014, the appellant filed a claim for service connection for sleep apnea, R. at 456-59, which was denied in August 2014. R. at 400-05. The RO's denial states that the appellant was not diagnosed with sleep apnea until 2011, and thus there was no evidence that the sleep apnea was related to service. R. at 401. The rating decision did not mention the appellant's sleep disturbances as related to the appellant's service-connected PTSD. R. at 400-05. In September 2015, the appellant pro se filed an NOD, asserting that "regardless of the VA[-]issued CPAP machine, I cannot get a good night[']s sleep." R. at 388-89. In October 2015, the appellant submitted VA Form 22a, authorizing his current counsel to represent him, and noting that he was "now filing a claim for increased compensation based on unemployability [(TDIU)]" due to his service-connected disabilities." R. at 349-53. At this time, the appellant also submitted a TDIU application, R. at 346-47, and his Social Security earnings record, R. at 344, as well as a supplemental claim for an increased PTSD disability rating. R. at 340-41.

The appellant was eventually granted a 100% disability rating for his PTSD, effective October 2015. R. at 167-74. One of the symptoms the Board found in granting a 100% disability rating was "chronic sleep impairment." R. at 171. In November 2016, the appellant through counsel filed another NOD, asserting that his effective date of the 100% disability rating for PTSD should be May 2014 because his sleep apnea claim is, and should have been considered as, secondary to his other service-connected disabilities, thus triggering an increased-rating evaluation for his PTSD rating and the matter of TDIU. R. at 77-82. The appellant specifically argued that the May 2014 claim was still open by virtue of the September 2015 NOD, and that VA had received new and material evidence in October 2015 by way of the TDIU application and Social Security earnings record, thus entitling the appellant to a May 2014 effective date for his increased PTSD disability rating. R. at 80.

In the October 2018 Board decision on appeal, the Board found that the May 2014 claim neither mentioned nor otherwise suggested that the appellant "intended to file a claim for an increase in the PTSD rating." R. at 7.This appeal ensued.

As the majority clearly and excellently explains, the appellant argues that the Federal Circuit's rulings in *Bond* and *Beraud* required the Board to assess, per 38 C.F.R. § 3.156(c)'s "new and material evidence" requirement, the evidence received in October 2015 as it related to the open and pending May 2014 claim for sleep apnea. *See* Appellant's Br. at 7-9; *see also infra* section II. The appellant next argues that once the Court made the threshold determination that § 3.156(c) applied, the Court should expand its holding in *Rice* by finding that the October 2015 submissions were "part and parcel" of the May 2014 claim, which impliedly encompassed a secondary-service-connection claim, increased disability rating for PTSD claim, and the matter of TDIU. *See infra* section II. *See* Appellant's Br. at 4-9; *see also* Oral Argument at 2:28–2:45, *Gudinas v. Wlkie*, U.S. Vet. App. No. 19-2640 (oral argument held Jan. 22, 2021), https://youtu.be/tNDRzKSlllg (last visited Mar. 18, 2021).

Though the Secretary and majority found these arguments unavailing, I believe these arguments warranted a different outcome. First, the majority notes that in *Ross* this Court held a claim for secondary service connection is not the equivalent of a claim for increased compensation. *See infra* section. II.B.1. The majority also emphasizes that the Federal Circuit reached a similar conclusion in *Manzanares*. *Id*. The majority concluded that it was "not persuaded that there is any meaningful difference between the facts here and those in *Ross* and *Manzanares*." *Id*. However, both the issue and facts do offer some distinction here.

First, the issue should be viewed from the perspective that though the veteran was experiencing additional difficulties and symptoms, he was unaware whether these difficulties stemmed from an alternative disability or his service-connected disability. Thus, he filed what he reasonably believed to be the source of his sleep disturbance–a recently diagnosed ailment. However, an in-depth examination of the record reveals several key facts: the appellant was granted service connection for PTSD with "poor sleep" as a symptom; he filed for additional compensation after being diagnosed with sleep apnea in 2011, and after that he was assigned a CPAP machine, and after that was still experiencing sleep disturbances, as evidenced by his May 2014 application and September 2015 NOD; and his PTSD disability rating that was eventually raised to 100% reveals the appellant suffers from "chronic sleep impairment." *See* R. at 748, 388-89, 171. Thus, the record shows that the appellant had sleep disturbances throughout the period on appeal and while he was diagnosed with PTSD. It even appears that because the CPAP machine was not providing any relief, the appellant's sleep disturbances may not have been related to sleep

apnea. But this is a determination that neither the Court, *see* 38 U.S.C. § 7252, nor the Board should make. Rather, it is a downstream determination. *See Colvin v. Derwinski*, 1 Vet.App. 171, 14 (1991) (holding that the Board cannot rely on its own medical judgment). Here, the veteran was unrepresented at the time of his May 2014 filing. In October 2015, his representative, an attorney well versed in veterans benefits and the VA system, notified VA that the appellant was seeking several benefits in addition to what was explicitly stated in his May 2014 application for benefits. Seemingly, a pro se veteran is being denied his due benefits because he initially attempted to navigate the complex veterans benefits system unrepresented and in this initial application was unable to properly identify the etiology. However, this is the responsibility of the Secretary and VA; it is the Secretary's statutorily prescribed duty to assist veterans in reasonably developing their claims and in maximizing their benefits. I believe this view is consistent with Congressional intent in creating a pro-claimant system. Keeping in mind that a pro-se litigant's filings are to be construed liberally, it seems rational, consistent, and even necessary that VA's duty to assist would include determining whether the appellant's service-connected disabilities have progressed over time, including whether they have affected other functions, such as sleep. *See Calma v. Brown*, 9 Vet.App. 11 (1996). This seems even more obvious in light of VA's oft-repeated view that veterans are not competent to opine on etiology of disabilities that require medical expertise. *See Barr v. Nicholson*, 21 Vet.App. 303, 307 (2007) (stating that "lay persons are not competent to opine on medical etiology or render medical opinions").

These are all extremely important and distinguishing factors that the majority has overlooked. A veteran should not be at a disadvantage by virtue of his representation, where counsel subrogates the Secretary's role in attempting to fully maximize the appellant's benefits, and particularly where the claimant is a decorated combat veteran. *See* R. at 886 (DD Form 214), 748.

The majority takes issue with the appellant's argument that "regardless of whether the claim is framed or presented as a claim for increased schedular rating, increased rating based on unemployability, or secondary service-connected compensation . . . the purpose of all these claims is to increase the amount of compensation payable for the veteran's service[-]connected injury," *see infra* section II. But the appellant precisely describes the type of benefits system Congress intended to create, and thus we would be within our congressional mandate to create new caselaw as the appellant excellently argued.

Unfortunately, the majority felt unduly restricted by our precedent, and declined to revisit our caselaw to emphasize this underutilized maxim of veterans benefits law. Well-established judicial philosophy notes that courts are always open to fashion a remedy. Going further, if the creators of a legislative scheme gave a class of people any rights, administrators of that law should uphold that right, and should not limit its effectiveness. *See Driscoll v. Burlington Bridge Co.*, 8 N.J. 433, 86 A.2d 201 (1952) (Vanderbilt, C.J.); *see also Johnson v. Christ Hosp.*, 45 N.J. 108, 113, 211 A.2d 376, 379 (1965) (per curiam), *aff'd for reasons stated below*, 84 N.J. Super. 541, 202 A.2d 874 (1964) (Matthews, Ch. Div.); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 366 (1886) (Matthews, J). Thus, while I appreciate and understand the importance of precedent, I believe the intent of Congress and the overarching canon of veterans benefits law should have led to an alternative outcome in favor of the veteran.

For the foregoing reasons, I respectfully dissent.